1997 ME 188

### MAINE STATE ACADEMY OF HAIR DESIGN, INC., et al.

v.

### COMMERCIAL UNION INSURANCE COMPANY, et al.

Supreme Judicial Court of Maine.

Argued March 5, 1997.

Decided Aug. 12, 1997.

John G. Connor (orally), Portland, for plaintiffs.

Anne M. Carney (orally), James D. Poliquin, Norman, Hanson & DeTroy, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Maine State Academy of Hair Design, Inc. (MSAHD), Jeffrey Saleeby, and William Malloy (collectively the Academy) appeal from the summary judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) in favor of Commercial Union Insurance Company on all five counts of the Academy's complaint seeking to have Commercial Union declared responsible to defend and indemnify the Academy in the actions brought against it by Amber Martin. The Academy argues the court erred in granting summary judgment because, contrary to the court's conclusion, there exists at least the potential that Martin's claims are covered by the Academy's insurance policy issued by Commercial Union. We agree and vacate the judgment in part.

[¶ 2] In her underlying action in the Superior Court Martin alleges the following: She was an employee of MSAHD for about ten years prior to being fired in April 1993. Jeffrey Saleeby was the president of MSAHD at all times relevant to her claims, and William Malloy was the operations manager. During the course of her employment Saleeby and Malloy made comments and carried out acts of a sexual nature toward her and others associated with MSAHD. Such conduct was unsolicited and unwelcome, hindered her job performance, and created an offensive work environment. Martin was fired two days after she told a supervisor she was considering bringing charges of sexual harassment.

[¶ 3] Martin further alleges the Academy 1) violated her rights under the Maine Human Rights Act by subjecting her to a hostile work environment, terminating her employment, and depriving her of employment, wages, and benefits on a sexually discriminatory basis; 2) negligently and intentionally discriminated against her in the terms and conditions of employment on a sexually discriminatory basis; 3) violated her civil rights, and maliciously and wrongfully terminated her employment; and 4) negligently inflicted severe emotional distress on her by its extreme and outrageous conduct and discriminatory actions, causing her to suffer the loss of, among other things, her professional reputation. Before filing her action in the Superior Court, Martin filed a sexual harassment complaint and a charge of discrimination with the Maine Human Rights Commission. The Commission issued a report in January 1994 finding reasonable grounds to believe that unlawful sexual harassment and constructive discharge had occurred.

[¶ 4] During the events described in Martin's complaint, MSAHD was insured under a commercial general liability policy issued by Commercial Union. MSAHD requested that Commercial Union provide a defense and indemnify it against Martin's actions in the Superior Court and provide a defense against the proceedings before the Maine Human Rights Commission. Commercial Union refused. As a result the Academy brought the present action, a six-count complaint seeking (I) compensatory damages for breach of the insurance contract; (II) a declaratory judgment obligating Commercial Union to defend

the Academy in Martin's actions in the Superior Court and before the Maine Human Rights Commission; (III) a declaratory judgment obligating Commercial Union to indemnify the Academy in Martin's action in the Superior Court; (IV) compensatory damages for misrepresentation; (V) compensatory damages on the theory of promissory estoppel; and (VI) punitive damages. After a hearing, the court granted Commercial Union's motion for a summary judgment on all counts. The Academy appeals.

■■■ [¶ 5] A summary judgment is properly granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact. M.R.Civ.P. 56(c); *Olson v. Albert,* 523 A.2d 585, 588 (Me.1987). On appeal we view the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Kandlis v. Huotari,* 678 A.2d 41, 42 (Me.1996). Whether Commercial Union has a duty to defend in this case is a question of law; thus, the trial court's decision is reviewed *de novo. Vigna v. Allstate Ins. Co.,* 686 A.2d 598, 599 (Me. 1996). We determine the duty to defend by comparing the allegations in the underlying complaint with the provisions of the insurance policy. *Id.* "If a complaint reveals a '*potential* . . . that the facts ultimately proved may come within the coverage,' a duty to defend exists." *Id.* (quoting *Travelers Indem. Co. v. Dingwell,* 414 A.2d 220, 226 (Me.1980)). *See also Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d 1350, 1352 (Me. 1996) (describing the comparison test as whether "there is *any potential basis* for recovery . . . regardless of the actual facts on which the insured's ultimate liability may be based," and stating that "[a]n insured is not at the mercy of the notice pleading of the third party suing him to establish his own insurer's duty to defend."). "Even a complaint which is legally insufficient to withstand a motion to dismiss gives rise to a duty to defend if it shows an intent to state a claim within the insurance coverage." *Dingwell,* 414 A.2d at 226. The Academy contends there exists at least the potential that

the facts proved at trial may fall within the policy coverage for bodily injury or personal injury.

### I. Bodily Injury Coverage

[¶ 6] The insurance policy at issue provides in pertinent part:

**SECTION I—COVERAGES**

**COVERAGE A. BODILY INJURY . . . LIABILITY**

1. **Insuring Agreement.**

 a. [Commercial Union] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages . . . .

 . . . .

 b. This insurance applies to "bodily injury" . . . only if:

 (1) The "bodily injury" . . . is caused by an "occurrence" . . .

 . . . .

2. **Exclusions.**

 This insurance does not apply to:

 a. "Bodily injury" . . . expected or intended from the standpoint of the insured . . . .

 . . . .

 d. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

 e. "Bodily injury" to:

 (1) An employee of the insured arising out of and in the course of employment by the insured

 . . . .

 This exclusion applies:

 (1) Whether the insured may be liable as an employer or in any other capacity . . . .

. . . .

**SECTION V—DEFINITIONS**

. . . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a per-

son, including death resulting from any of these at any time.

. . . .

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The trial court concluded that the exclusion regarding bodily injury to an employee arising out of employment—so called exclusion "e"—applies to all the claims in the underlying complaint because no allegation in the complaint alleges conduct by MSAHD outside of Martin's employment.

A. Unintended Injury & Exclusion "a"

■ [¶ 7] As a preliminary matter, we address Commercial Union's contentions that the trial court's rationale need not be reached because it is entitled to a summary judgment on other grounds. Commercial Union argues that we need not reach the exclusions of the policy because the underlying claims are not within the coverage for bodily injury. It contends that due to the intentional nature of the unlawful conduct amounting to sexual harassment and discrimination, such conduct does not constitute an accident as a matter of law, and therefore, does not constitute an "occurrence" as defined and covered under the policy.

[¶ 8] The Academy argues that any bodily injury to Martin (i.e., her claim of severe emotional distress) that resulted from the alleged sexual harassment and wrongful discharge constitutes an accident because the claimed bodily injury was at least potentially unanticipated. It contends, among other things, that sexual harassment can take a myriad of forms, including everything from excessive sexually-oriented "joking" to demands for sexual favors, and that Commercial Union's contentions reflect a narrow, unrealistic view of sexual harassment. The Academy contends that such allegations, as well as the allegations of emotional distress, trigger the duty to defend. We agree.

■ [¶ 9] The accidental nature of an event for purposes of a liability insurance contract does not derive from the volitional nature of the act, but rather from the unintentional nature of the consequences flowing from the act. We have consistently found a duty to defend under policies containing language similar to the policy at issue, even though the underlying claims alleged intentional conduct, provided the alleged harms could constitute an accidental unintended consequence of the intentional conduct. *See Vigna,* 686 A.2d at 600–01 (emotional pain and suffering resulting from failure to pay for contracted services); *Gibson,* 673 A.2d at 1353 (harm resulting from trespass); *Maine Bonding & Cas. Co. v. Douglas Dynamics,* 594 A.2d 1079 (Me.1991) (emotional distress resulting from wrongful discharge). Here Martin's claimed bodily injury was, at least, potentially unanticipated. Moreover, Martin's claim of negligent infliction of emotional distress also triggers the duty to defend. *See Hanover Ins. Co. v. Crocker,* 1997 ME 19, ¶ 5, 688 A.2d 928, 930 ("[I]njuries resulting from negligent conduct are considered 'accidental' and not 'expected or intended' and . . . those injuries are therefore caused by an occurrence within the language of a[n insurance] policy.").

■ [¶ 10] Commercial Union next argues that, as a matter of public policy, all claims of unlawful sexual harassment and sexual discrimination based on disparate treatment, as opposed to disparate impact, should be within the exclusion for expected or intended injury—so called exclusion "a"— as a matter of law. In other words, it contends that an expectation of harm should be inferred from conduct constituting actionable sexual harassment and sexual discrimination. The Academy counters that the question is not whether there exists an expectation of harm, but rather whether there exists an expectation of bodily injury, and bodily injury is not necessarily expected or intended by the perpetrator of unwanted sexual advances and wrongful discharge. We agree.

[¶ 11] Commercial Union's arguments on this issue are similar and related to its contentions regarding the scope of the coverage for bodily injury, and as such, they are similarly unavailing. Although Commercial Union attempts to distinguish our decision in *Maine Bonding,* as involving wrongful discharge rather than sexual harassment or discrimination, the principle of law outlined in that case is applicable here. In *Maine Bonding,* we held that an exclusion for ex-

pected or intended injury applies only if the insured subjectively intended harm or subjectively foresaw harm was practically certain to occur. *Maine Bonding*, 594 A.2d at 1081–82. Here it is at least possible that Martin could recover for injury that the insured parties neither subjectively intended nor foresaw and therefore the exclusion would not apply. Moreover, Commercial Union's arguments ignore that Martin could potentially recover for the wrongful discharge alleged in one count of her complaint; thus *Maine Bonding* is controlling, at least with respect to that count. Commercial Union's arguments also ignore that the policy may provide coverage for one of the insured parties whose negligence contributed to Martin's injuries. *Crocker*, 1997 ME 19, ¶¶ 6–9, 688 A.2d at 931–32.

### B. Exclusion "e"

 [¶ 12] The Academy argues that because the language of the exclusion "e" mirrors the immunity provisions of the workers' compensation law, it should be construed in a similar fashion. Thus, it excludes only claims already covered by workers' compensation. The Academy contends the court erred by applying the exclusion here because various injuries alleged by Martin either did not arise out of her employment, or did not arise in the course of her employment. Commercial Union contends that nothing in exclusion "e" limits its application to claims covered by workers' compensation and that the presence of exclusion "d" regarding such claims supports rejection of the Academy's overly narrow interpretation. Commercial Union further contends that exclusion "e" applies in this case because all claims in the underlying complaint are based on wrongful acts occurring during the course of Martin's employment with MSAHD and there are no factual allegations unconnected with such employment. Although we agree that the Academy's interpretation of the exclusion is more narrow than warranted by the policy language, we disagree that exclusion "e" precludes coverage in this case.

[¶ 13] Both parties rely on *Bond Builders, Inc. v. Commercial Union Ins. Co.*, 670 A.2d 1388 (Me.1996), to support their interpretations of the exclusion at issue. In *Bond Builders* the underlying complaint consisted

of an action brought by a former employee of the defendant, Bond Builders, Inc., against the company, its president, and another employee. The complaint contained allegations of, among other things, assault and battery, employment discrimination, and infliction of severe emotional distress. *Id.* at 1389. After concluding Bond Builders' workers' compensation insurer had no duty to defend, we concluded that the comprehensive general liability and umbrella insurers had such a duty despite the fact each policy contained an employee exclusion provision similar to the exclusion at issue here. We stated: "[The insurers] fail to recognize that the complaint does not allege that [the plaintiff's] injuries arose out of and in the course of his employment. In fact the contrary is alleged." *Id.* at 1391. Similarly, in the instant case Martin does not allege in her complaint that all of her injuries arose out of and in the course of her employment, but rather claims merely that all the incidents occurred during the period of time that she was employed by MSAHD. Martin's notice pleading does not necessarily imply that all of the alleged actions leading to her injuries occurred at the work place, nor does it necessarily imply that her injuries arose while working. For example, based on the allegations in her complaint, at trial Martin may prove that inappropriate sexual advances occurred at her home, or at other locations or under circumstances that trigger coverage. Because Martin's complaint reveals at least the potential that the facts proved at trial may come within the policy coverage, the duty to defend exists. *Vigna*, 686 A.2d at 599. *See also Gibson*, 673 A.2d at 1352 ("Given the possible existence of any legal or factual basis for payment under a policy, an insurer's duty to defend should be decided summarily in favor of the insured.").

### II. Personal Injury Coverage

 [¶ 14] The insurance policy provides in pertinent part:

**SECTION I—COVERAGES**

. . . .

**COVERAGE B. PERSONAL INJURY ... LIABILITY**

**1. Insuring Agreement.**

a. [Commercial Union] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" ... to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages....

....

## SECTION V—DEFINITIONS

....

10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

....

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

The trial court concluded that the acts alleged in the underlying action are not within the definition of "personal injury" contained in coverage B of the policy. The Academy argues the court erred because there exists at least the potential that Martin could recover for disparagement or invasion of privacy, each of which is covered by the policy. We agree.

[¶ 15] In her complaint Martin alleges that the Academy's extreme and outrageous conduct and discriminatory actions damaged her professional reputation. In light of that allegation, there exists at least the potential for coverage under part B of the policy, and thus the court erred by determining that the acts were not within the definition of personal injury. *See Gibson,* 673 A.2d at 1352 (duty to defend exists if there is any potential basis of recovery regardless of the actual facts on which the insured's ultimate liability is based); *cf. City of Old Town v. American Employers Ins. Co.,* 858 F.Supp. 264, 269 (D.Me.1994) (duty to indemnify jury verdict finding damages from emotional distress and injury to reputation because policy was ambiguous in that it contained broad language covering the utterance of "defamatory or disparaging material" and the "violation of an individual's right of privacy").

## III. Maine Human Rights Commission Proceeding

[¶ 16] The remaining issue asserted on appeal is whether Commercial Union has a duty to defend the proceedings before the Maine Human Rights Commission. The trial court did not address the Academy's arguments in detail, concluding merely that because Commercial Union has no duty to defend Martin's claims in the Superior Court, it has no duty to defend the claims presented to the Maine Human Rights Commission.

[¶ 17] The insurance policy provides in pertinent part:

## SECTION I—COVERAGES
## COVERAGE A. BODILY INJURY ... LIABILITY

1. **Insuring Agreement.**

a. [Commercial Union] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" ... to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages....

....

## SECTION V—DEFINITIONS

....

13. "Suit" means a civil proceeding in which damages because of "bodily injury" ... [Or] "personal injury" ... to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

The Academy argues that Commercial Union's duty to defend is limited only by the definition of "suit" contained in the policy. The Academy argues that Commercial Union has a duty to defend because the proceeding before the Maine Human Rights Commission is a civil proceeding in which damages are alleged. The Academy further contends that the proceedings before the Commission and

Martin's action in the Superior Court are so interrelated that the duty to defend arises. Commercial Union argues that its duty to defend is not limited only by the definition of suit, but also by the language limiting its "duty to defend any 'suit' seeking those damages." Commercial Union contends that the proceeding before the Commission is merely an investigatory proceeding rather than a civil proceeding within the policy definition of suit. Commercial Union further argues that its duty to defend applies only to a suit seeking damages for those injuries to which the insurance applies, and the proceeding before the Commission does not seek such damages. We agree.

[¶ 18] First, the policy states clearly that the insurer's duty to defend is limited to suits seeking damages covered by the policy, and not any suit included within the policy definition. Proceedings *before the Commission* do not seek damages; instead, damages may only be sought in a subsequent enforcement action in the Superior Court. *See* 5 M.R.S.A. § 4612(4)(A) (Supp.1996);[1] *cf. Patrons Oxford Mut. Ins. Co. v. Marois*, 573 A.2d 16, 20 (Me.1990) (no duty to defend administrative proceeding brought by the Department of Environmental Protection to compel clean-up because the agency action was not a suit seeking damages). Second, contrary to the Academy's contention, the Commission proceeding is not a necessary antecedent to Martin's action in the Superior Court. Instead, pursuant to 5 M.R.S.A. § 4622(1), filing a complaint with the Commission is merely a prerequisite to obtaining, in a subsequent civil action, attorney fees pursuant to 5 M.R.S.A. § 4614 and civil penal damages pursuant to 5 M.R.S.A. § 4613.

 [¶ 19] Because we conclude Commercial Union has a duty to defend, we further conclude the trial court erred by granting a summary judgment on Count I, seeking compensatory damages for breach of contract, and Count VI, seeking punitive damages, but only to the extent that such counts pertain to Martin's underlying suit in the Superior Court. Similarly, we conclude the court erred by granting a summary judgment on Count III, seeking a declaratory judgment regarding the duty to indemnify; however, we do not further address Commercial Union's duty to indemnify because it is premature at this time.[2] Because the Academy does not challenge the summary judgment as to Counts IV and V, we affirm the judgment on those counts.

The entry is:

Judgment on Count III vacated, and judgment on Counts I, II and VI vacated with respect to the duty to defend in the Superior Court, and affirmed with respect to the duty to defend the Maine Human Rights Commission proceeding. Remanded for (1) entry of a judgment declaring Commercial Union Insurance Company is obligated to provide a defense to Maine State Academy of Hair Design, Inc., Jeffrey Saleeby, and William Malloy in Amber Martin's underlying action in the Superior Court, and (2) further proceedings consistent with the opinion herein. Judgment on Counts IV and V affirmed.

1. 5 M.R.S.A. § 4612(4)(A) (Supp.1996) provides:
 If the commission finds reasonable grounds to believe that unlawful discrimination has occurred, and further believes that irreparable injury or great inconvenience will be caused the victim ... or [others] if relief is not immediately granted, or if conciliation efforts under subsection 3 have not succeeded, the commission may file in the Superior Court a civil action seeking such relief as is appropriate, including temporary restraining orders.

2. An insurer's duty to indemnify is not determined until the liability of the insured has been decided. *Cambridge Mut. Fire Ins. Co. v. Perry*, 1997 ME 94, 692 A.2d 1388, 1391 n. 3. The duty to defend is broader than the duty to indemnify, and an insurer may have to defend before it is clear whether a duty to indemnify exists. *Hanover Ins. Co. v. Crocker*, 1997 ME 19, 688 A.2d 928, 929–30 n. 1. We express no opinion as to whether Commercial Union will have a duty to indemnify the Academy. Commercial Union might demonstrate that Saleeby and Malloy subjectively intended to harm Martin when they sexually harassed her, thus falling within the policy's exclusion for injuries "expected or intended from the standpoint of the insured."