542 S.E.2d 827

Erin SMITH, Plaintiff Below,

v.

ANIMAL URGENT CARE, INC. and Dr. Karl E. Yurko, Defendants/Third–Party Plaintiffs Below.

Animal Urgent Care, Inc., Defendant/Third–Party Plaintiff Below, Appellant,

v.

American States Insurance Company, Third–Party Defendant Below, Appellee.

No. 27058.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 6, 2000.

Decided Nov. 3, 2000.

Jeffrey A. Holmstrand, Esquire, McDermott & Bonenberger, PLLC, Wheeling, for Animal Urgent Care.

Jeffrey M. Wakefield, Esquire, Erica M. Baumgras, Esquire, Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, for American States Insurance Company.

Ancil G. Ramey, Esquire, Karen E. Kahle, Esquire, Steptoe & Johnson, Charleston, for Dr. Yurko.

SCOTT, Justice:

Appellant Animal Urgent Care ("Animal Care") appeals from the May 21, 1999, order of the Circuit Court of Ohio County granting summary judgment to Appellee American States Insurance Company ("American States") on the issue of whether American States was required to indemnify or defend Animal Care in connection with an underlying sexual harassment claim.[1] The lower court relied on two policy exclusions exempting coverage for "bodily injuries" intended from the insured's standpoint ("intentional acts" exclusion) and for those "bodily injuries" sustained by an employee that arose "out of and in the course of employment" ("employee" exclusion). Having examined the policy language in conjunction with the pleadings filed below, we find no error with regard to the circuit court's ruling and accordingly, affirm.

I. Factual and Procedural Background

On October 3, 1997, Erin Smith filed a civil action in the circuit court against both Animal Care and one of its veterinarians, Dr. Karl E. Yurko. In her complaint, Ms. Smith sets forth allegations of sexual harassment, wrongful discharge, and intentional infliction of emotional distress, for which she seeks both compensatory and punitive damages. During the course of the nine-and-a-half-month period that Ms. Smith and Dr. Yurko both worked at Animal Care,[2] Ms. Smith alleges that Dr. Yurko engaged in various acts for the purpose of harassing, degrading, and embarrassing her through unwelcome sexual advances and exploitation. According to Ms. Smith, these acts included both verbal and physical conduct of a sexual nature.[3]

---

1. Through the filing of a brief, Dr. Karl E. Yurko joined in the arguments raised by Animal Care.

2. While Ms. Smith was employed by Animal Care from September 19, 1995, until October 17, 1996, Dr. Yurko did not begin his employment until January 1996.

3. The complaint does not include any specifics as to the nature of the alleged physical conduct or any dates, times, or places where the alleged unwelcome activity took place.

Through a declaratory judgment proceeding, American States sought a determination of whether it was required under a general commercial liability policy to provide coverage and/or a defense in connection with the lawsuit filed by Ms. Smith.[4] After examining the policy provisions against the allegations of the complaint, the lower court determined that both the "intentional acts" and "employee" exclusionary clauses exempted coverage. Citing this Court's decision in *Horace Mann Insurance Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581 (1988), the lower court concluded that the "intentional acts" exclusion precluded coverage for the sexual harassment based complaint. The circuit court ruled additionally that the allegations of the complaint fell squarely within the parameters of the "employee" exclusion. Animal Care seeks a ruling from this Court that neither exclusion applies and therefore American States has an obligation to indemnify, or alternatively, that Animal Care has a minimal obligation to defend until such time as the facts of the case are further developed to properly permit a determination as to the applicability of the policy exclusionary language.[5]

## II. Standard of Review

■ Our reasons for conducting de novo review of this case are twofold. First, it is well-established that this Court reviews summary judgment rulings pursuant to a plenary standard of review. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Second, de novo review of this matter is compelled because issues requiring interpretation of an insurance contract are presented. *See Payne v. Weston,* 195 W.Va. 502, 506–07, 466 S.E.2d 161, 165–66 (1995) (recognizing that "interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal").

**4.** American Insurance voluntarily defended Animal Care under a reservation of rights agreement during the declaratory judgment proceeding.

**5.** The need for factual development is necessary, according to Animal Care, to determine whether the sexual harassment occurred during the temporal course of the employment and whether the

## III. Discussion

### A. Policy Language

Our examination of whether the lower court correctly ruled below is necessarily linked to the language of the applicable policy exclusions, as well as pertinent definitions. The commercial general liability policy provides that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of **"bodily injury"**, "property damage", "personal injury", or "advertising injury" to which this insurance applies. (emphasis supplied)

The policy indicates that "[t]his insurance applies: (1) To 'bodily injury' and 'property damage' only if: (a) The 'bodily injury' or 'property damage' is caused by an **'occurrence'** that takes place in the 'coverage territory'; . . . ." (emphasis supplied) The exclusions section of the policy provides that "[t]his insurance does not apply to:

> a. 'Bodily injury' or 'property damage' **expected or intended from the standpoint of the insured**. . . .
>
> . . . .
>
> e. 'Bodily injury' to: (1) An employee of the insured **arising out of and in the course of employment by the insured;** . . . ." (emphasis supplied)

Both "bodily injury" and "occurrence" are specifically defined as follows:

> **"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

harassment included physical acts which qualify as "bodily injur[ies]" under the policy definitions necessary to invoke coverage. Animal Care contends that declaratory relief should have been postponed on the issue of the duty to indemnify given these factual issues concerning the existence of a "bodily injury."

## 1. "Bodily Injury"

Given the fundamental restriction of the coverage at issue to claims which assert "bodily injury," we proceed initially to determine whether the complaint at issue contains averments of "bodily injury." *See* Syl. Pt. 3, *Bruceton Bank v. United States Fidelity and Guar. Ins. Co.*, 199 W.Va. 548, 486 S.E.2d 19 (1997) (holding that insurer's duty to defend is governed by whether allegations of complaint are reasonably susceptible of interpretation that claim is covered by policy terms).[6] Animal Care posits that the issue of whether sexual harassment constitutes a "bodily injury" is a question of first impression for this Court. More accurately, the issue presented is whether a sexual harassment claim that is limited to emotional harm which lacks any physical manifestation can be said to constitute a "bodily injury" under the policy definition of that term.

In support of its contention that emotional distress without accompanying physical injury is sufficient to constitute "bodily injury" under the policy, Animal Care cites one case.[7] In *Crabtree v. State Farm Insurance Co.*, 632 So.2d 736 (La.1994), the court ruled that damages limited to emotional distress and mental anguish could come within a separate definition of "bodily injury" [8] under the theory that "if the definition was intended to cover only external, physical injuries, then 'bodily injury' easily could have been defined in a more restrictive fashion . . . ." *Id.* at 744.

American States distinguishes *Crabtree* first, based upon its differing policy definition of "bodily injury;" second, as an aberrational result in light of the clear weight of authority; and third, as an inapposite decision which failed to address whether solely emotional damages constitute "bodily injury" in the context of a sexual harassment claim.[9] Of these three valid distinctions, we focus on the dearth of authority supporting Animal Care's position. Both commentators and tribunals alike identify the majority view to espouse that "absent physical manifestations or physical contact, purely emotional distress allegations are insufficient to qualify as bodily injury." Kathleen S. Edwards and Molly Nelson Ferrante, *Insurance Coverage for Employment–Related Claims*, 46 Prac. Law. 35, 36 (July 2000); *see O'Dell v. St. Paul Fire & Marine Ins. Co.*, 223 Ga.App. 578, 478 S.E.2d 418, 420 (1996) (holding that alleged emotional distress arising from sexual harassment was not "bodily injury" where such distress did not result from physical harm or injury); *Greenman v. Michigan Mut. Ins. Co.*, 173 Mich.App. 88, 433 N.W.2d 346, 348–49 (1988) (finding no coverage for alleged mental distress injuries arising out of sexual harassment and discrimination claim on grounds that injuries lacked any physical manifesta-

---

**6.** Since the issue of an insurer's obligation to defend is made with regard to the allegations of the complaint, we must reject Animal Care's claim that discovery is necessary to resolve the issue of coverage. *See Bruceton Bank*, 199 W.Va. at 555, 486 S.E.2d at 26.

**7.** In its reply brief, Animal Care cited the case of *Lavanant v. General Accident Insurance Co.*, 79 N.Y.2d 623, 584 N.Y.S.2d 744, 595 N.E.2d 819 (1992), as additional support for the proposition that mental injuries alone are sufficient to come within a standard insurance policy definition of "bodily injury." While the court did determine that mental injuries could come within a layperson's reading of the meaning intended by defining "bodily injury" to include "sickness or disease," *Lavanant*, like *Crabtree v. State Farm Insurance Co.*, 632 So.2d 736 (La.1994), was not a sexual harassment case. 584 N.Y.S.2d 744, 595 N.E.2d at 822. The claim at issue in *Lavanant* was grounded in negligence and involved a tenant's attempt to recover from a landlord for mental injuries associated with the partial collapse of an apartment ceiling. *Id.* at 820.

Dr. Yurko, in his brief, mentions two Wisconsin cases where "bodily injury" has been expansively interpreted to include mental injuries. *See Doyle v. Engelke*, 219 Wis.2d 277, 580 N.W.2d 245, 249–50 (1998); *Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis.2d 77, 540 N.W.2d 26, 29–30, *rev. denied*, 542 N.W.2d 155 (Wis.1995). Those cases are easily distinguished from the instant case, however, as the court acknowledged in *Tara N.* that "in Wisconsin, bodily injury has been considered to be broader than physical injury." *Id.* at 30.

**8.** Under the policy at issue in that case, "bodily injury" was defined as "bodily injury to a person and sickness, disease or death which results from it." *Crabtree*, 632 So.2d at 743.

**9.** In *Crabtree*, a wife sought to come within the policy definition of "bodily injury" in connection with her assertion of a claim for negligent infliction of emotional distress arising from her husband's motorcycle accident. 632 So.2d at 738.

tion); *Garvis v. Employers Mut. Cas. Co.,* 497 N.W.2d 254, 257 (Minn.1993) (ruling that only emotional distress with appreciable physical injury could qualify as "bodily injury"); *Citizens Ins. Co. v. Leiendecker,* 962 S.W.2d 446, 450–54 (Mo.Ct.App.1998) (adopting majority position that "bodily injury" encompasses only physical harm and excludes mental suffering or emotional distress and citing numerous state and federal decisions following majority position as well as limited authority espousing minority position); *David v. Nationwide Mut. Ins. Co.,* 106 Ohio App.3d 298, 665 N.E.2d 1171, 1173 (1995) (relying upon national judicial trend and ruling that emotional distress did not come within policy definition of "bodily injury" defining same as "bodily injury, sickness, or disease"); *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997) (holding that "bodily injury" unambiguously requires injury to physical structure of human body and stating that "commonly understood meaning of 'bodily,' ... implies a physical, and not purely mental, emotional, or spiritual harm"); *see also Vienna Family Med. Assocs., Inc. v. Allstate Ins. Co.,* 78 F.3d 580, 1996 WL 93830, at *5 (4th Cir. March 5, 1996) (noting that significant weight of authority holds that "bodily injury" does not encompass nonphysical injuries such as emotional distress).

■ In discussing the rationale for excluding purely emotional injuries from the category of bodily injury, the court in *Leiendecker* explained that "in insurance law 'bodily injury' is considered to be a narrower concept than 'personal injury' which covers mental or emotional injury." 962 S.W.2d at 453.

Further elucidating the distinction between personal and bodily injury, the court commented:

> It is well settled in insurance law that "bodily injury" and "personal injury" are not synonyms and that these phrases have two distinct definitions. The term "personal injury" is broader and includes not only physical injury but also any affront or insult to the reputation or sensibilities of a person. "Bodily injury," by comparison, is a narrow term and encompasses only physical injuries to the body and the consequences thereof.

*Id.* (citation omitted) (quoting *Allstate Ins. Co. v. Diamant,* 401 Mass. 654, 518 N.E.2d 1154, 1156 (1988)). Finding the reasoning underlying the majority position to be persuasive,[10] we determine that in an insurance liability policy, purely mental or emotional harm that arises from a claim of sexual harassment and lacks physical manifestation[11] does not fall within a definition of "bodily injury" which is limited to "bodily injury, sickness, or disease."[12]

### 2. "Occurrence"

Although the trial court did not rule on whether sexual harassment constitutes an "occurrence" under the policy, we nonetheless address this question given its importance to the issue of coverage.[13] Like the requisite "bodily injury" necessary to invoke liability coverage, an "occurrence" must similarly exist before American States is obligated to provide indemnification. American States argues that a sexual harassment claim cannot fall within the definition of "occur-

10. In addition, we note that employers can purchase a specific type of insurance known as employment practices liability insurance ("EPLI") that provides coverage for the types of claims asserted here by Ms. Smith: wrongful termination, discrimination, and sexual harassment. These EPLI policies or endorsements were created specifically in response to numerous court decisions rejecting coverage under traditional general liability policies for employment-related actions, such as that brought by Ms. Smith.

11. Because the complaint is completely devoid of allegations that Ms. Smith suffered any physical symptoms as a result of the alleged harassment, we find no basis for discussing what qualifies as a physical manifestation.

12. We reject outright Animal Care's contention that the allegation of "physical contact" in the complaint is sufficient to trigger the "bodily injury" component of the liability policy. This argument presupposes that any physical contact necessarily results in "bodily injury" under the policy. *See National Fruit Prod. Co. v. Fireman's Fund Ins. Co.,* 178 F.3d 1285, 1999 WL 270033, at *3 n. 2 (4th Cir. May 4, 1999) (noting that allegations of physical or bodily contact do not necessarily imply bodily injury).

13. Both parties briefed the issue of the existence of an "occurrence" within the policy definitions.

rence" since that term refers to either an accident or continuous exposure to the same general harmful conditions. Emphasizing the accidental nature of an "occurrence," American States relies on the reasoning employed by the federal district court in *Commercial Union Insurance Cos. v. Sky, Inc.*, 810 F.Supp. 249 (W.D.Ark.1992), where the court opined that "it strains the imagination to speculate how a pattern of sexual overtures and touching can be 'accidental.'" *Id.* at 253; *accord Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.*, 786 F.Supp. 629, 633 (N.D.Tex.1992) (finding no duty to defend sexual harassment claim because such claims "allege intentional acts that are not 'occurrences' for the purpose of policy coverage"), *aff'd*, 2 F.3d 105 (5th Cir. 1993); *Sena v. Travelers Ins. Co.*, 801 F.Supp. 471, 475–77 (D.N.M.1992) (concluding that allegations of voluntary, deliberate, and intentional sexual misconduct could not be characterized within policy definition of "occurrence"); *Russ v. Great American Ins. Co.*, 121 N.C.App. 185, 464 S.E.2d 723, 725 (1995) (holding that "acts of sexual harassment, as a matter of law, are not 'accidents' and thus not bodily injuries caused by 'occurrences'"), *rev. denied*, 342 N.C. 896, 467 S.E.2d 905 (1996).

■ Animal Care does not dispute the accepted view that sexual harassment does not come within the meaning of an "occurrence" under an accident-based definition, but instead argues that coverage is required because of the negligence-type allegations involving Animal Care. For the same reasons discussed in section B.1. of this opinion, *infra*, the inclusion of a negligence-oriented theory of recovery against Animal Care does not alter the essence of the claim for purposes of determining the availability of insurance coverage. Sexual harassment, and its inherently non-accidental nature, remain the crux of the case regardless of whether negligence is alleged against Animal Care. *See GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1118 (7th Cir.1995) (holding that insured's negligence in failing to prevent employee's intentional act does

not constitute an "occurrence," reasoning that "'volitional act does not become an accident simply because the insured's negligence prompted the act'") (quoting *Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co.*, 915 F.2d 306, 311 (7th Cir.1990)). We conclude that in an insurance liability policy, a claim based on sexual harassment does not come within the definition of "occurrence," which is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## B. Exclusions

### 1. "Intentional Acts" Exclusion

■ While our analysis could end here based on the lack of "bodily injury" or "occurrence" necessary to trigger coverage, we proceed to address the exclusions relied upon by the circuit court in its grant of summary judgment. In ruling that the "intentional acts" exclusion was applicable, the trial court applied the *Leeber* decision to the instant case and concluded that "because the complaint is fundamentally one of sexual harassment," coverage was expressly excluded. At issue in *Leeber*, was whether the "intentional injury" exclusion in a homeowner's liability policy [14] precluded the availability of coverage for alleged sexual misconduct. 180 W.Va. at 376, 376 S.E.2d at 582. Addressing the issue as a matter of first impression, this Court examined the majority and minority views and concluded, consistent with the majority position, that

[t]here is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains a so-called 'intentional injury' exclusion. In such a case the intent of an insured to cause some injury will be inferred as a matter of law.

*Id.* at 376, 376 S.E.2d at 582, syllabus.

We are unpersuaded by Animal Care's contention that *Leeber* is not controlling because it was not a sexual harassment case. Clearly, our holding that intent will be im-

---

14. Animal Care's attempt to limit the applicability of *Leeber* is unavailing, as the Court framed its consideration of the issue by specifically including "other liability insurer[s]," rather than limiting its consideration of the exclusionary language solely with regard to homeowner's policies. 180 W.Va. at 376, 376 S.E.2d at 582.

plied as a matter of law in instances of sexual misconduct extends logically to allegations of sexual harassment.[15] The United States District Court for the Southern District of West Virginia recently considered and rejected the argument that *Leeber* would only apply where an actual sexual assault has occurred. In *American States Insurance Co. v. Fishes Hot Dog Huntington, Inc.*, No. 3:98–0165 (S.D.W.Va. Jan. 22, 1999), the district court stated that *"Leeber* rejects such line-drawing." *Id.* at 3. As support for this conclusion, the court reasoned that *"Leeber*'s holding explicitly applies to allegations of 'sexual misconduct,' not just sexual assault." *Id.* In addition, the district court relied upon the fact that this Court was careful in *Leeber* not to limit its holding to those cases "involving 'violence,' or penetration or a lengthy period of time during which the sexual contacts have occurred." *Id.* at 3–4 (quoting *Leeber,* 180 W.Va. at 379–80, 376 S.E.2d at 585–86). Both the district court in *Fishes Hot Dog* and the lower court correctly applied *Leeber* to sexual harassment cases to conclude that coverage is precluded for such claims where the liability policy contains an "intentional acts" exclusion.

As a final means of attempting to avoid the preclusive effects of the "intentional acts" exclusion, Animal Care contends that the complaint filed by Ms. Smith contains additional allegations that are couched in negligence. Specifically, Animal Care maintains that averments stating that it "knew or should have known" of Dr. Yurko's conduct,[16] but "failed to implement proper and appropriate corrective action in response thereto" imply a cause of action in negligence.[17] An analogous argument was rejected by this

---

**15.** We explained the underlying rationale for implying intent in sexual misconduct cases:

"Most courts deny liability insurance *coverage* for alleged sexual misconduct by applying an objective test to an intentional injury exclusion" because the sexual misconduct "is so *inherently* injurious, or 'substantially certain' to result in some injury" that "public policy precludes a claim of unintended consequences, that is, a claim that *no* harm was intended to result from the act."

*Smith v. Sears, Roebuck & Co.,* 191 W.Va. 563, 565, 447 S.E.2d 255, 257 (1994) (quoting *Leeber,* 180 W.Va. at 379, 376 S.E.2d at 584–85); *cf. Maine State Academy of Hair Design, Inc. v. Commercial Union Ins. Co.,* 699 A.2d 1153, 1157–58 (Me.1997) (applying subjective method of interpreting "intended acts" exclusion to hold that only if insured specifically intended injury that flowed from acts of harassment would exclusion apply and commenting that "bodily injury is not necessarily expected or intended by the perpetrator of unwanted sexual advances and wrongful discharge").

**16.** The Fourth Circuit observed in *National Fruit Product,* that the "knew or should have known" standard for imposing vicarious liability on an employer in a sexual harassment case is no longer viable following the United States Supreme Court's decisions in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). 178 F.3d 1285, 1999 WL 270033 at *4, n. 5. The standard now imposed upon employers creates liability "if sexual harassment of an employee by a supervisor results in a 'tangible employment action'" "regardless of whether the employer knew or should have known of the harassment." *Id.* (citing *Reinhold v. Commonwealth,* 151 F.3d 172, 174–

75 (4th Cir.1998) and quoting *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 764–65, 118 S.Ct. 2257).

**17.** American Insurance argues that the complaint is devoid of any allegations sounding in negligence. Refuting Animal Care's contention that the "knew or should have known" averments imply liability under negligence principles, American Insurance states that if Ms. Smith could prove that Animal Care failed to act upon complaints of misconduct and then actually discharged her following such complaint, Animal Care could be found to have committed the intentional tort of inflicting emotional distress. *See Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580, 584–85 (1987) (holding that corporation's failure to take appropriate action in response to employee's complaint of sexual harassment constituted tort of intentional infliction of emotional distress). Moreover, American Insurance points to the fact that the complaint is replete with allegations that Animal Care committed intentional acts. Specifically, Ms. Smith avers that "defendants, Animal Urgent Care . . ." engaged in acts designed to "harass, degrade, and embarrass" her; she was "discriminated or retaliated against" by Animal Care; and that the actions of the defendants were "extreme and outrageous" and "intended to inflict . . . emotional distress." In *American States Insurance Co. v. Natchez Steam Laundry,* 131 F.3d 551 (5th Cir.1998), an analogous case recently decided by the Fifth Circuit, the court determined that the "intentional acts" exclusion applied to both the alleged harasser and the defendant business because the business was charged with intentional conduct: failure to investigate, failure to take action against alleged harasser, and failure to provide an avenue for redress. *Id.* at 554.

---

Court in *Leeber* where the insured focused on the inclusion of allegations concerning the negligent seduction of the assaulted student involved in an attempt to secure coverage. Borrowing from a Maryland decision, we stated that "the allegations of 'negligence' in the complaint are 'a transparent attempt to trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of "negligent" activity.'" 180 W.Va. at 381, 376 S.E.2d at 587 (quoting *Harpy v. Nationwide Mut. Fire Ins. Co.*, 76 Md.App. 474, 545 A.2d 718, 725 (1988)). In *Fishes Hot Dog*, the district court cited this same language from *Leeber* in rejecting the insured's attempt to avoid the "intentional acts" exclusion based on inclusion of the term "negligent" in the complaint. Slip op. at 4.

Other courts have similarly determined that inclusion of negligence-type allegations in complaints that are essentially sexual harassment claims will not defeat the application of an "intentional acts" exclusion. *See Bilstein Corp. v. Federal Ins. Co.*, 168 F.3d 497, 1999 WL 96438, at *1 (9th Cir. 1999) (finding no duty to defend sexual harassment case that included claims of negligence and defamation under intentional act exclusion since non-harassment claims were "'inseparable'" from intentional harassment conduct); *Medallion Indus., Inc. v. Atlantic Mut. Ins. Co.*, 152 F.3d 927, 1998 WL 403338, at *2 (9th Cir.1998) (upholding district court's determination of no coverage in sexual harassment case including count of negligent supervision, reasoning that mere labeling does not create negligence especially where Oregon law requires proof of employer's knowledge of employee's wrongful act); *Green Chimneys Sch. for Little Folk v. National Union Fire Ins. Co.*, 244 A.D.2d 387, 664 N.Y.S.2d 320, 321 (N.Y.App.Div.1997) (affirming denial of coverage for sexual harassment claim because claim did not constitute "occurrence" under policy definition and ruling that "inclusion in the underlying complaint of causes of action sounding in negligent hiring and supervision does not alter the fact that 'the operative act[s] giving rise to any recovery [are] the [intentional sexual] assault[s]'"); *Board of Educ. v. Continental Ins. Co.*, 198 A.D.2d 816, 604 N.Y.S.2d 399, 400 (N.Y.App.Div.1993) (finding no coverage for teacher's claim against school district for failing to prohibit sexual harassment by principal, creating offensive work environment, and wrongful termination and observing that inclusion of "knew or should have known" language did "not change the gravamen of the complaint from one alleging intentional acts ... to one involving negligent conduct"). Accordingly, we determine that the inclusion of negligence-type allegations in a complaint that is at its essence a sexual harassment claim will not prevent the operation of an "intentional acts" exclusion contained in an insurance liability policy which is defined as excluding "bodily injury" "expected or intended from the standpoint of the insured."

### 2. "Employee" Exclusion

A second exclusionary provision relied upon by the trial court was the provision that denied coverage to employees for bodily injury "arising out of and in the course of employment by the insured." Numerous tribunals have ruled that an "employee" exclusion precludes coverage for sexual harassment claims which allege injuries sustained in the course of the victim's employment. *See Gates, Hudson & Assocs., Inc. v. Federal Ins. Co.*, 141 F.3d 500 (4th Cir.1997) (ruling that sexual harassment claim was an injury that fell within employee exclusion language of commercial excess umbrella policy); *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80 (5th Cir.) (holding that broadly-worded employee exclusion precluded coverage for employee's sexual harassment claims against her supervisors), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 589, 139 L.Ed.2d 425 (1997); *Security Indus. Ins. Co. v. Cigna Property & Cas. Co.*, No. Civ. A 96–2835, 1997 WL 403415, at *3 (E.D.La. July 16, 1997) (finding coverage barred under employee exclusion for sexual harassment claims as well as negligent failure to take action against harassers, reasoning that alleged injuries incurred at place of employment during the work day and were caused by co-employee or supervisor); *Old Republic*, 786 F.Supp. at 632, (holding that employee exclusion precluded coverage for sexual harassment and negligence claims which were inextricably intertwined with underlying sexual harassment and discrimination claims). Even where part of the alleged misconduct occurs away from the work prem-

ises, courts have nonetheless found that the employee exclusion is applicable. *See Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 420 (Minn.1997) (concluding that three instances of off-premises conduct were directly related to creation of hostile work environment and that sexual harassment claims necessarily fell within exclusion for claims arising out of and during scope of employment because such harassment results in injury to working relationships); *but see Maine State Academy of Hair Design, Inc. v. Commercial Union Ins. Co.*, 699 A.2d 1153, 1157 (Me.1997) (finding duty to defend where complaint averred only that harassment incidents occurred during period of her employment, but not that all of plaintiff's injuries arose out of and in course of her employment and suggesting that non-workplace sexual advances would trigger coverage).

Animal Care cites only one decision for its contention that this Court should rule that sexual harassment cases do not "arise out of and in the course of employment." [18] In *SCI Liquidating Corp. v. Hartford Insurance Co.*, 272 Ga. 293, 526 S.E.2d 555 (2000), the Georgia Supreme Court, in answering a question certified to it by the Eleventh Circuit, decided to apply workers' compensation precedent concerning the terms "arising out of and in the course of employment" and determined that sexual harassment cases do not arise out of employment, reasoning that sexual harassment results from " 'the willful act of a third person for personal reasons' rather than a work-related condition." *Id.* at 557 (quoting *Murphy v. ARA Servs., Inc.*, 164 Ga.App. 859, 298 S.E.2d 528, 530 (1982)). We find the logic employed by the dissenting justice in *Hartford Insurance* to be more convincing:

The use of workers' compensation law to guide the interpretation of a contract not involving workers' compensation is inappropriate. Workers' compensation is a state-imposed and regulated system that provides limited benefits to employees who suffer injuries on the job without regard to the traditional principles of tort law. Public policy concerns have led the legislature to mandate that courts interpret the workers' compensation act liberally in order to bring both employers and employees within its coverage, but these concerns have no place in interpreting private contracts. Additionally, the umbrella policy contains a specific exclusion for claims covered by workers' compensation, and it is therefore illogical and redundant to incorporate workers' compensation law into exclusion 16 ["employee" exclusion].

*Id.* at 557–58 (Fletcher, J., dissenting) (footnote omitted); *see also SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1218–19 (11th Cir.1999) (discussing reasons for treating phrase "arising out of and in the course of employment" differently for workers' compensation and liability insurance purposes and recognizing that other jurisdictions have excluded coverage of sexual harassment claims under an "employee" exclusion, reasoning that such claims "necessarily 'arise[ ] out of and in the course of employment' ").

■ Finding no sound basis for applying workers' compensation principles to insurance law, we decline to adopt the approach advocated by Animal Care. We also reject Animal Care's contention that the trial court could not rule on the applicability of the "employee" exclusion given the absence of allegations in the complaint alleging that all of the conduct at issue occurred within the scope and course of Ms. Smith's employment.[19] We conclude that an "employee" exclusion, which exempts coverage under a

---

**18.** Animal Care posits that because courts have held that sexual harassment cases do not arise in the course of employment within the schema of workers' compensation laws, this Court could similarly rule for purposes of insurance law. Animal Care further suggests that if sexual harassment is viewed as being outside the course of employment for workers' compensation purposes where construction is liberal and in favor of the claimant, it stands to reason that such claims should similarly be outside the course of employ-

ment for insurance purposes, and therefore not excluded from coverage under an "employee" exclusion, based on the fact that exclusionary clauses are strictly construed against an insurer. *See* Syl. Pt. 5, *National Mut. Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

**19.** It can be similarly said that the complaint contains no allegations squarely placing any of the alleged harassment as occurring outside the place of employment.

liability policy for "bodily injury" arising in the course of employment, includes claims for sexual harassment by a co-employee since those claims "arise out of and in the course of employment."

Based on the foregoing, we affirm the decision of the Circuit Court of Ohio County.

Affirmed.

Justice McGRAW dissents.