**FILED**

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*Westfield Ins. v. Sistersville Tank Works*, No. 22-848

Armstead, Justice, dissenting:

I dissent from the majority opinion's holding in syllabus point six that "[a] continuous-trigger theory applies to determine when coverage is activated under the insuring agreement of an occurrence-based CGL policy if the policy is ambiguous as to when coverage is triggered." Instead, I believe the Court should have found that if an occurrence-based CGL policy is ambiguous as to when coverage is triggered, the manifestation theory of coverage applies because it would provide certainty to all parties as to when coverage is triggered. Further, the manifestation theory is consistent with this Court's existing law on when a "bodily injury" is said to have occurred. Moreover, this issue has been addressed and analyzed by the Southern District of West Virginia in *State Auto Prop. & Cas. Ins. Co. v. H.E. Neumann Co.*, No. 2:14-CV-19679, 2016 WL 5380925, (S.D.W. Va. Sept. 23, 2016) ("*State Auto*"). It concluded that "the manifestation theory is the appropriate approach in the present context of latent diseases[.]" *Id.* at 17. I agree with the district court's analysis and believe this Court should have followed the same approach. Therefore, I respectfully dissent from the majority opinion's ruling.

As noted by the United States Court of Appeals for the Fourth Circuit, this Court has not addressed the issue of when a latent bodily injury, sickness, or disease occurs under an occurrence-based CGL policy so as to trigger coverage. *Westfield Ins. Co. v. Sistersville Tank Works, Inc.*, No. 20-2052, 2022 WL 16911994, at *2-3 (4th Cir. Nov. 14, 2022). Therefore, the Court of Appeals certified the following question to this Court:

1

At what point in time does bodily injury occur to trigger insurance coverage for claims stemming from chemical exposure or other analogous harm that contributed to development of a latent illness?

In answering this question, I agree with Petitioner's assertion that the manifestation theory of coverage "most closely follows existing West Virginia law on when a bodily injury can be said to have occurred." In previous cases involving whether insurance coverage applies in a bodily injury claim, this Court has recognized that at least *some physical manifestation* of harm is necessary to trigger coverage. This Court has held that "[i]n an insurance liability policy, purely mental or emotional harm that . . . lacks physical manifestation does not fall within a definition of 'bodily injury' which is limited to 'bodily injury, sickness, or disease.'" Syl. Pt. 1, in part, *Smith v. Animal Urgent Care, Inc.*, 208 W. Va. 664, 542 S.E.2d 827 (2000). Similarly, this Court has provided that "[b]ecause there is no indication that [the plaintiff's] emotional distress has *physically manifested itself*, we conclude that she has not sustained a 'bodily injury' to trigger coverage under [the insurer's] CGL policy." *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W. Va. 470, 484, 745 S.E.2d 508, 522 (2013) (emphasis added).

While these prior cases from our Court did not directly address the present issue before us, the Southern District Court of West Virginia squarely addressed the current issue in *State Auto*, 2016 WL 5380925.[1] The district court in *State Auto* examined how

---

[1] The Southern District Court's ruling in *State Auto* was vacated pursuant to settlement. *See State Auto Prop. & Cas. Ins. Co. v. H.E. Neumann Co.*, No. 2:14-CV-

(continued . . .)

this Court would determine the applicable coverage trigger where an employer was sued for exposure to various chemicals and heavy metals resulting in certain lung diseases. The district court noted that the issue was whether the claimant's "'bodily injury' occurred during the policy period. . . . Courts refer to this disagreement as pertaining to the so-called 'trigger of coverage,' i.e., what it is that must happen during the policy period in order to trigger the insurance company's duty to defend and indemnify the insured." *Id.* at 15. The district court then explained that

> [t]he plain language of the CGLs and the Umbrella Policies does not resolve the trigger-of-coverage issue in the context of latent diseases. In particular, in order for there to be coverage, the "bodily injury" must be caused by an "occurrence." . . . However, the policies do not include any language limiting coverage based on the date of the "occurrence." Instead, the temporal requirement is provided by the language that "[t]he 'bodily injury' . . . [must] occur[ ] during the policy period." . . . This vague temporal requirement is what injects ambiguity into these coverage provisions in the context of latent diseases.

*Id.* at 16 (internal quotation and citation omitted).

After examining multiple approaches that have been applied in determining when coverage triggers in a latent injury case, the district court found that "the manifestation theory is the appropriate approach in the present context of latent diseases for numerous reasons." *Id.* at 17. The district court noted that its application of the manifestation trigger was consistent with two recent federal district court decisions that

19679, 2017 WL 1536464, (S.D.W. Va. Mar. 17, 2017). While *State Auto* was ultimately vacated due to settlement, its reasoning and analysis directly address the issue before us in the current matter.

"addressed identical trigger-of-coverage policy language—i.e., coverage only triggers if the relevant harm 'occurs during the policy period'—and applied the manifestation theory." *Id.*[2]

Next, the district court found that "the manifestation approach provides a measure of certainty" in determining the coverage trigger in latent condition cases. *Id.* It explained this conclusion as follows:

> The general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged. Often, these cases involve a wrongful act that produces no harm for a period of time and then suddenly manifests itself in a burst of damage.
> . . .
> There are situations, however, in which the existence or scope of damage remains concealed or uncertain for a period of time even though damage is occurring. . . . Determining exactly when damage begins can be difficult, if not impossible. In such cases we believe that the better rule is that the [trigger of coverage] is deemed to take place when the injuries first manifest themselves.

*Id.* at 18 (internal citation and quotation omitted).

While the district court found that the manifestation approach would provide certainty as to the trigger of coverage, it concluded that

---

[2] The district court cited *Westfield Ins. Co. v. Mitchell*, 22 F. Supp. 3d 619, 622-23 (S.D. W. Va. 2014) and *Simpson-Littman Constr., Inc. v. Erie Ins. Prop. & Cas. Ins. Co.*, 2010 WL 3702601 (S.D. W. Va. Sept. 13, 2010). While noting that "these cases involved a different type of harm—property damage, rather than latent diseases," the district court nevertheless found that "the similarities between the alleged harm in those cases and the instant matter are striking. In particular, the facts. . . all involve an initial harm, latency period, then discovery of the harm." *Id.* at 17.

[t]he determination of when exactly [the claimant] was exposed to the allegedly harmful materials is likely near impossible. . . . Indeed, as the parties note, [the claimant] alleges exposure to harmful substances over a period of several decades. . . . In such circumstances, a rule limiting coverage to the time of exposure is untenable, insofar as this determination may simply be impossible. . . . Providing for coverage under the manifestation theory, on the other hand, provides parties with certainty as to the trigger of coverage—the date on which the individual manifests the latent condition.

*Id.*

Based on the foregoing, the district court held that "in applying West Virginia substantive law the manifestation theory is the appropriate approach for the timing-of-coverage issue relating to the latent-disease allegations[.]" *Id.* at 19. I agree with *State Auto's* reasoning and analysis and believe this Court should have applied the same approach in answering the certified question at issue.[3]

---

[3] The First Circuit arrived at the same conclusion in *Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 19 (1st Cir. 1982). In *Eagle-Picher*, the court closely examined the policy language and found:

The policies clearly distinguish between the event which causes injury—the accident or exposure—and the resulting injury or disease. Yet . . . it is the resulting injury, not the exposure, which must take place "during the policy period" in order to trigger coverage; and it is uncontested that even sub-clinical injury to the lung does not occur simultaneously with the inhalation of asbestos. . . . We would also observe that, if a single exposure to asbestos was intended to trigger coverage, the policy language would likely have reflected this intent, rather than defining an "occurrence" in part as a "continuous or repeated" exposure to conditions.

(continued . . .)

I agree with the district court that the manifestation theory should be the general rule that applies in determining when coverage is triggered in a latent injury case. However, this general rule should clearly be tempered by the language of each policy in a specific case. Indeed, the parties are free to enter into policy agreements that specify continuous trigger, manifestation trigger, or another approach that the parties deem

---

Moreover, . . . the common, ordinary meaning of the policy language supports the manifestation theory. An individual with tiny sub-clinical insults to her lungs would not say that she had any injury or disease, given one expert's testimony that "over 90% of all urban city dwellers have asbestos-related scarring." Rather, she would say that a disease resulted when she had symptoms which impaired her sense of well-being, or when a doctor was able to detect sufficient scarring to make a prognosis that the onset of manifested disease was inevitable. "Injury" is defined by Webster as "hurt, damage, or loss sustained"; it is a broad term which covers the "result of inflicting on a person or thing something that causes loss, pain, distress, or impairment." As sweeping as this definition is, it is difficult to consider sub-clinical insults to the lung to constitute an "injury" when these insults do not cause "loss, pain, distress, or impairment" until, if ever, they accumulate to become clinically evident or manifest.

Finally, the policies distinguish between "bodily injury" and "sickness or disease." If the terms are to have any distinct meaning, "bodily injury" is most easily thought of as an injury caused by external violence or impact. Asbestosis, by contrast, is normally considered to be a disease, not a bodily injury. . . . "Disease," in turn, is defined as "an impairment of the normal state of the living animal ... or of any of its components that interrupts or modifies the performance of the vital functions." Every disease is presumably preceded by the onset of sub-clinical changes in the body. To state that the disease occurs when these sub-clinical alterations take place, where, as here, the disease does not inevitably or even usually result from the sub-clinical changes, is to subvert the plain meaning of "disease" and to read the term entirely out of the policy.

*Id.*, 682 F.2d at 19-20 (internal citation omitted)

appropriate. However, when an occurrence-based CGL policy is ambiguous as to when coverage is triggered, I believe the manifestation theory should be applied.

Based on the foregoing, I respectfully dissent from the majority opinion.