# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP2356 |
| COMPLETE TITLE: | Archie A. Talley,<br>　　　　Plaintiff-Appellant,<br>　　　v.<br>Mustafa Mustafa, d/b/a Burleigh Liquor, a/k/a<br>Burleigh Food Market and Adams Foods, LLC,<br>　　　　Defendants,<br>Auto Owners Insurance Company,<br>　　　　Defendant-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 375 Wis. 2d 757, 897 N.W.2d 55
PDC No:　2017 WI App 31 - Published

| | |
|---|---|
| OPINION FILED: | May 11, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 9, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Daniel A. Noonan |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J., dissents, joined by ABRAHAMSON, J., and KELLY, J. (opinion filed). KELLY, J., dissents, joined by ABRAHAMSON, J., and A.W. BRADLEY, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Justin F. Wallace*, *William R. Wick*, and *Nash*, *Spindler*, *Grimstad*, *& McCracken*, *LLP*, Manitowoc. There was an oral argument by *Justin F. Wallace*.

For the plaintiff-appellant, there was a brief filed by *George E. Chaparas* and *Carlson*, *Blau & Clemens*, *S.C.*, Milwaukee. There was an oral argument by *George E. Chaparas*.

An amicus curiae brief was filed on behalf of The Wisconsin Insurance Alliance by *James A. Friedman*, *Mark W. Hancock*, and *Godfrey & Kahn*, *S.C.*, Madison.

**2018 WI 47**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP2356
(L.C. No.   2012CV7847)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**Archie A. Talley,**

        **Plaintiff-Appellant,**

    **v.**

**Mustafa Mustafa, d/b/a Burleigh Liquor, a/k/a
Burleigh Food Market and Adams Foods, LLC,**

        **Defendants,**

**Auto-Owners Insurance Company,**

        **Defendant-Respondent-Petitioner.**

**FILED**

**MAY 11, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1    REBECCA   GRASSL   BRADLEY,   J.   In   this   insurance coverage   dispute,   we   consider   whether   a   business-owners liability   policy   covers   a   negligent   supervision   claim   arising out   of   an   alleged   employee's[1]   intentional   act   of   physically

_____

[1] We acknowledge the parties disagree as to the status of the man who punched the customer. Archie A. Talley insists the man was an employee. Mustafa Mustafa says the man was not an employee, and there are no paychecks or documentation to refute Mustafa's representation. For the purpose of our review, viewing the allegations in the complaint in a light most
(continued)

punching a customer in the face. We hold that this insurance policy does not provide coverage under these circumstances. When the negligent supervision claim pled rests solely on an employee's intentional and unlawful act without any separate basis for a negligence claim against the employer, no coverage exists. Accordingly, we reverse the decision of the court of appeals,[2] which reversed the circuit court's[3] grant of summary judgment in favor of Auto-Owners Insurance Company (Auto-Owners) on the coverage issue. The circuit court correctly concluded that there is no coverage under this business liability insurance policy for either the employee's intentional act or the negligent supervision claim against the employer arising solely out of the employee's intentional act.[4]

---

favorable to the non-moving party, we assume without deciding, that the puncher was an employee. See Summers v. Touchpoint Health Plan, Inc., 2008 WI 45, ¶15, 309 Wis. 2d 78, 749 N.W.2d 182. Our assumption shall have no effect on the pending but stayed trial on the merits; the factfinder must resolve this dispute.

[2] See Talley v. Mustafa, 2017 WI App 31, 375 Wis. 2d 757, 897 N.W.2d 55.

[3] The Honorable Daniel A. Noonan, Milwaukee County Circuit Court, presiding.

[4] Talley did not appeal the circuit court's ruling that the Auto-Owners policy does not provide any insurance coverage to the employee based on the allegations that the employee intentionally punched Talley in the face.

I. BACKGROUND

¶2   The insurance coverage issue in this case arises from an incident that occurred in July 2009 at a neighborhood convenience store, Burleigh Food Market.  Mustafa Mustafa owned and operated the store, and at the time carried a "Businessowners' Liability Policy" with Auto-Owners.[5]

¶3   The provisions in the business liability insurance policy provide, as material:

A. COVERAGES

1. Business Liability We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSION SUPPLEMENTARY PAYMENTS.

   a.   This insurance applies only:[6]

       (1) To "bodily injury" or "property damage":

---

[5] Mustafa is the sole member, owner, officer, and shareholder of Adams Foods, LLC, which is the business that owns Burleigh Food Market.  The caption in this case lists the defendants as:  "Mustafa Mustafa, d/b/a Burleigh Liquor, a/k/a Burleigh Food Market, Adams Foods, LLC" and Auto-Owners. Although the insurance policy's declaration page lists "Burleigh Food Mart" as the insured, the parties and the record refer to the store as "Burleigh Food Market."  There is no dispute that these are one in the same.

[6] This section indicates it also applies to "personal injury" caused by an "offense," but an amendment to the policy deletes this language and instead defines "personal injury" as "injury, other than 'bodily injury', arising out of" a list of offenses, none of which are applicable.

    (a) That occurs during the policy period; and

    (b) That is caused by an "occurrence". The "occurrence" must take place in the "coverage territory".

. . . .

B.  EXCLUSIONS

1.  Applicable to Business Liability Coverage –

This insurance does not apply to:

a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . . .

C.  WHO IS AN INSURED

1.  If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

.  .  .  .

F.  LIABILITY AND MEDICAL EXPENSES DEFINITIONS

.  .  .  .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

.  .  .  .

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Some formatting altered).

¶4  On July 24, 2009, Archie A. Talley walked into Mustafa's store to buy beer. Talley claims that while he was inside the store, Mustafa's security guard, Keith Scott, punched him in the face twice. Talley left the store and called police to report the assault. Talley was taken to the hospital where he was treated for a broken jaw.

¶5  On July 17, 2012, Talley filed suit against Mustafa, Keith Scott,[7] and Mustafa's insurer, Auto-Owners. The complaint alleged, as material:

- "[Keith Scott] was a[n] employee, security guard and/or customer of the defendant, Mustafa Mustafa."

_____

[7] Talley did not identify Keith Scott until after filing suit. The complaint identified Scott as "JOHN DOE, a fictitious individual (address unknown)."

5

- "Auto-Owners . . . issued a policy of liability insurance wherein it agreed, among other things, to pay up to the limits of its policy any and all damages sustained as a result of negligence in the ownership and/or maintenance of . . . Burleigh Food Market."

- As Talley entered the store, "the alleged security guard on the premises, began a verbal altercation with" Talley. Talley, "while walking in the premises was then struck by the security guard twice, fracturing his jaw."

- "The defendants had a duty to properly train and supervise their employees and have a duty to exercise the highest degree of care for the safety of their customers from any harm that might befall them by reason of the actions and/or conduct of their employees."

- "The defendants failed to provide adequate or proper security for their customers, and further said defendants, their agents, employees, or representatives, were the parties who attacked the plaintiff. A videotape viewed by officers of the Milwaukee Police Department from the defendants' own security system, showed the assault."

¶6 Auto-Owners hired counsel to represent Mustafa. Auto-Owners filed an Answer and conducted discovery, which revealed issues related to coverage. In January 2014, Auto-Owners notified the insured that it was defending the case under a reservation of rights letter. In October 2014, Auto-Owners filed a motion to bifurcate the issues of coverage and liability

6

and stay the proceedings on the latter so that the coverage issue could be decided before the liability issues were tried.

¶7 The circuit court granted the motion to bifurcate and stayed the trial on the merits to "allow the defendant to seek a declaratory judgment with regard to insurance coverage issues." Mustafa hired his own lawyer to represent him on the coverage issue. In February 2015, Auto-Owners filed its motion for declaratory and summary judgment, asking the circuit court to declare that the insurance policy does not provide coverage, and to grant summary judgment dismissing Auto-Owners from the lawsuit. Auto-Owners asserted that no coverage existed under the policy because: (1) Scott was not Mustafa's employee, and therefore not an insured; (2) even if a factual dispute about Scott's status exists, Mustafa did not believe Scott was an employee; (3) an intentional assault——punching someone in the face——is not an "occurrence" under the insurance policy and excluded by the intentional acts exclusion; (4) there can be no coverage for a negligent supervision claim based on an assault, and no negligent supervision claim exists because Scott was not an employee.

¶8 The circuit court held two hearings on the motion and both times concluded the Auto-Owners insurance policy did not provide coverage for Scott or for Mustafa. The circuit court addressed the intentional act at the May 2015 hearing and held:

- "So if it's an intentional act, those things are clearly not covered under Wisconsin law. It wasn't an occurrence."

7

- Attorneys trying to get coverage for an intentional act will "try to shoehorn in [a] negligence claim" to make the intentional act an occurrence.    "[T]his is not anything other than an intentional tort.  It doesn't fall within the definition of an accident that's covered by the policy."

- Auto-Owners "has aptly pointed out in [its] brief of what an occurrence is under Wisconsin law.  And intentional acts are simply not covered because they are not accidents."

- "And that's the ruling of the Court, and there's no coverage."

¶9    The circuit court held a second hearing in September 2015 to address whether coverage existed for the negligent supervision claim, which was not discussed at the May 2015 hearing.  The circuit court held:

- "Punching somebody is not a negligent act."

- Talley says "Scott used unreasonable force" so the exception in the policy that permits reasonable force does not apply.  "[Talley] state[s] unequivocally that it was unreasonable force."  "[T]he pure undisputed facts as asserted by the plaintiff with no doubt regardless of employment is that this force was unreasonable."

- Insurance polices do not cover the unreasonable use of force regardless of employment.

- Talley did not have any facts separate from the punch in the face to support the negligent supervision claim.

8

"You've got to tell me exactly how some employer is supposed to supervise or train somebody to do what? To commit acts of unreasonable force." "You have to tell this Court just what it is that would make somebody negligently supervised."

- "There's only one act that caused an injury here." "And that's an unreasonable force as undisputed by the plaintiff."

¶10 The circuit court entered judgment in favor of Auto-Owners and dismissed the insurer from the case. Talley appealed. The court of appeals reversed in a split decision, with Judge Paul F. Reilly in dissent. See Talley v. Mustafa, 2017 WI App 31, 375 Wis. 2d 757, 897 N.W.2d 55. The majority of the court of appeals held that a reasonable insured would expect coverage for the negligent supervision claim alleged in the complaint, and that a disputed issue of material fact existed "as to whether Scott was an employee of Mustafa or otherwise had a special relationship with him such that Mustafa had a duty to train and supervise Scott with due care." Id., ¶2. Judge Reilly concluded that no coverage existed under the policy because the intentional "attack/assault" alleged could not be an "occurrence" since it was not an accident. Id., ¶¶39-40 (Reilly, J., dissenting).

¶11 Auto-Owners petitioned this court for review, and we granted the petition.

9

II.  STANDARD OF REVIEW

¶12  "We independently review a grant of summary judgment using the same methodology of the circuit court and the court of appeals."  Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co., 2016 WI 54, ¶11, 369 Wis. 2d 607, 881 N.W.2d 285.  "Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law."  Id.; Wis. Stat. § 802.08(2)(2015-16).[8]

¶13  Whether to grant "a declaratory judgment is addressed to the circuit court's discretion."  Olson v. Farrar, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1.  When the exercise of discretion turns on a question of law, however, our review is de novo.  Id.  This case presents an insurance coverage question, which requires the interpretation of an insurance policy; this is a question of law we review de novo.  Water Well Sols. Serv. Grp., Inc., 369 Wis. 2d 607, ¶12.  Therefore, we review the circuit court's grant of declaratory judgment de novo.

III. ANALYSIS

¶14  The issue before us is whether the insurance contract between Auto-Owners and Mustafa provides coverage for Talley's negligent supervision claim against Mustafa.  Auto-Owners argues that only an "occurrence" triggers coverage and under the facts here, there was no occurrence.  It insists that Talley's attempts to bootstrap negligence into the case as a separate

---

[8] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

10

tortious act by alleging Mustafa was negligent in training and supervising Scott should be rejected. Auto-Owners further contends that agreement by both parties to the insurance contract——here Mustafa and Auto-Owners——that the policy does not provide coverage should be determinative of the coverage question.[9] Talley insists that his negligent supervision cause of action against Mustafa involves a separate act of negligence that should be covered under the Auto-Owners insurance policy. In an amicus brief, the Wisconsin Insurance Alliance contends that commercial general liability policies do not cover the

---

[9] Auto-Owners also asks us to correct the "troublesome" language in the court of appeals opinion suggesting that a negligent supervision claim can exist against an employer absent an employee-employer relationship. See Talley, 375 Wis. 2d 757, ¶36 (directing that "a jury could reasonably infer Scott worked for or had a special relationship with Mustafa which obligated Mustafa to train and supervise Scott with due care"). This court recognized the tort of negligent hiring, training, or supervision as a valid cause of action against an employer when the negligence of the employer is "connected to the act of the employee." See Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 262, 580 N.W.2d 233 (1998). Miller involved employees, not an individual who may have a special relationship with an employer. Id. at 257-58, 262. We reserve the question of whether Scott was an employee of Mustafa for the factfinder, see supra note 1, because resolving that factual dispute is not necessary to our disposition. The issue of whether the tort of negligent supervision may be extended to a situation involving an actor who is not an employee but has a special relationship with an employer is also not dispositive here; therefore, we do not decide it. Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co., 2016 WI 54, ¶33 n.18, 369 Wis. 2d 607, 881 N.W.2d 285 (cases should be decided on the narrowest possible grounds). However, because we reverse the court of appeals decision, its statement has no precedential effect. See Blum v. 1st Auto & Cas. Ins. Co., 2010 WI 78, ¶42, 326 Wis. 2d 729, 786 N.W.2d 78.

11

intentional act of assault and battery, and an injured party cannot obtain coverage by creatively pleading a cause of action for negligent supervision against the insured employer.

¶15 This is the first time we have been asked to decide whether coverage exists based on an allegation that the employer should have trained the employee not to punch a customer in the face. Courts in other jurisdictions have decided whether an allegation of negligent supervision by an employer can trigger coverage when an employee causes injuries to another by intentionally violating the criminal law. See, e.g., U.S. Underwriters Ins. Co. v. Val-Blue Corp., 647 N.E.2d 1342, 1344 (N.Y. 1995) (holding no coverage for employer based on negligent supervision claim when employee security guard shot a person who entered the nightclub) (applying assault and battery exclusion); Smith v. Animal Urgent Care, Inc., 542 S.E.2d 827, 831-32 (W. Va. 2000) (holding no coverage for employer when employee sexually harassed another employee). And, courts are rejecting plaintiffs' attempts to create coverage under commercial general liability policies by simply inserting negligence claims into complaints when employees' intentional acts cause the injuries giving rise to lawsuits. See, e.g., Mt. Vernon Fire Ins. Co. v. Dobbs, 873 F. Supp. 2d 762, 766 (N.D. W. Va. 2012) (agreeing that plaintiff "cannot mischaracterize intentional acts as negligence claims in order to avoid the exclusions contained within the insurance policy").

¶16 We reverse the decision of the court of appeals and hold that there is no coverage under the Auto-Owners insurance

12

policy. This policy applies only to bodily injury caused by an "occurrence," which is defined as an accident. Intentionally punching someone in the face two times is not an accident under any definition. Accordingly, the negligent supervision claim against Mustafa can qualify as an occurrence only if facts exist showing that Mustafa's own conduct accidentally caused Talley's injuries. Because there are no facts in Talley's complaint (or in any extrinsic evidence) alleging any specific separate acts by Mustafa that caused Talley's injuries, there is no occurrence triggering coverage for the negligent supervision claim. The only specific assertion Talley made in this regard is that Mustafa should have trained Scott not to hit people. We hold that when a negligent supervision claim is based entirely on an allegation that an employer should have trained an employee not to intentionally punch a customer in the face, no coverage exists.

## A. Wisconsin Case Law

¶17 Before comparing Talley's factual allegations with the language of the Auto-Owners insurance policy, we look to several insurance coverage cases, which although not directly on point, provide helpful general principles. This court has decided two coverage cases involving plaintiffs who were punched in the face: (1) Schinner v. Gundrum, 2013 WI 71, 349 Wis. 2d 529, 833 N.W.2d 685; and (2) Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845. In Schinner, the insured held an underage-drinking party. 349 Wis. 2d 529, ¶¶17-21. One of the guests suffered serious injury after

13

another guest punched him twice in the face and then kicked him in the head. Id., ¶¶2, 24. The injured guest sued the insured and his insurer. Id., ¶2. We held that a homeowner's liability policy does not provide coverage when the insured's actions were entirely volitional and a substantial factor in causing the plaintiff's bodily injuries. Id., ¶¶66-69. We emphasized that in determining whether the facts alleged satisfy the policy's requirement that bodily injury be caused by an accident, the focus was on ascertaining "what is the injury-causing event." Id., ¶66. Only if the facts alleged show that the injury-causing event is an accident is the policy's initial grant of coverage triggered. Id., ¶¶66-69, 81.

¶18 Estate of Sustache also involved an underage-drinking party where one guest punched another guest, who fell and sustained fatal injuries. Estate of Sustache, 311 Wis. 2d 548, ¶5. The deceased's estate sued the puncher, his parent, and their homeowner's insurer. Id., ¶2. The complaint alleged both a negligence claim against the puncher (Count 2); an intentional battery claim against the puncher (Count 3); and a vicarious liability claim against the puncher's parent (Count 4). Id., ¶6. This court, after an exhaustive review of cases defining "accident," concluded that the negligence claim did not create coverage because the puncher's "volitional act," which caused the harm, was not "accidental, and, thus, did not give rise to an 'occurrence.'" Id., ¶¶30-56 ("One cannot 'accidentally' intentionally cause bodily harm."). We did not discuss the vicarious liability claim because it was dependent upon Count 3,

14

the intentional battery claim.  Id., ¶6 n.6.  Estate of Sustache clarifies that it is the act that caused the harm that is important in determining whether the insurance policy provides coverage.  If the act that caused the harm was not an accident, then there was no occurrence to trigger coverage.[10]

¶19 There is only one insurance case from this court resolving a coverage dispute involving a claim for negligent supervision against an employer based on the intentional acts of its employees——Doyle v. Engelke, 219 Wis. 2d 277, 580 N.W.2d 245 (1998).  In Doyle, this court concluded the comprehensive

---

[10] In Estate of Sustache, we cited 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 127:21, 127——54-55 (3d ed. 2000), noting:

> In order to constitute an "accident" or "occurrence" under a policy of liability of insurance, an event must be unforeseen, unexpected, or unanticipated.  The nature of an assault is such that the event itself is typically intentional in nature.  On their face, therefore, assaults would appear to inherently fall outside of the coverage provided in a liability policy . . . .If the insured is also the assailant, the result is that there is no coverage for the assault because the act was intentionally committed by the insured.

Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶53 n.13, 311 Wis. 2d 548, 751 N.W.2d 845 (emphasis added; formatting altered).  It is important to clarify that although the emphasized sentence is true, its converse is not universally true.  In other words, when an insured is not the assailant, this excerpt does not automatically mean coverage exists.  As we see in this case, Mustafa is the insured and was not the assailant, but no coverage exists because Talley does not sufficiently allege his bodily injuries were caused by accidental separate acts by Mustafa.

15

general liability (CGL) policy of Wisconsin Voice of Christian Youth, Inc. (WVCY) covered the plaintiff's claim for negligent supervision against WVCY as the employer of two employees who filed false legal documents to intentionally harass the plaintiff. Id. at 281-82. The plaintiff alleged the employees' actions caused her severe emotional distress and that WVCY was negligent in failing to supervise its employees. Id. at 287. After concluding that the plaintiff's injuries met the insurance policy's definition of "bodily injury," id. at 288, this court addressed "whether WVCY's negligent supervision of its employees constitutes an 'event' for coverage purposes," id. at 289. The CGL policy insuring WVCY covered bodily injury "caused by an event," and "event" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 287-89. The Doyle court concluded that the plaintiff alleged an "event" that led to her damages because both "accident" and "negligence" have definitions that "center on an unintentional occurrence leading to undesirable results," and a reasonable insured would expect that an "event" includes negligent acts. Id. at 289-90. Concluding that an "event" existed, this court then turned to the policy's intentional act exclusion to see if it negated coverage. Id. at 290-91. The intentional acts exclusion in the policy said the insurer would not "cover bodily injury or property damage that's expected or intended by the protected person." Id. at 290. Although there was no dispute that this exclusion prevented WVCY's employees from being covered by the

16

policy, this court held that because the negligent supervision claim did not allege that WVCY itself acted intentionally, coverage was trigged by the policy. Id. at 291-92.

¶20 It is unclear from Doyle whether the plaintiff alleged specific separate acts of negligence by WVCY that caused the plaintiff's injuries beyond the general allegation of negligent supervision. There is no analysis of alleged specific acts by WVCY being compared to the insurance policy's language. Instead, the Doyle court relied on similar definitions of accident and negligence, together with a general allegation of negligent supervision, to discern the existence of an "event." This is problematic because in determining whether an event or an occurrence took place, courts "must focus on the incident or injury that gives rise to the claim, not the plaintiff's theory of liability." Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI 86, ¶36, 311 Wis. 2d 492, 753 N.W.2d 448 (noting that insurance policies insure against occurrences, not "theories of liability" (citations and quoted source omitted)); see also Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶¶5, 37-49, 268 Wis. 2d 16, 673 N.W.2d 65 (focusing on the cause of the property damage in determining whether there was an occurrence for insurance coverage). Like in Schinner and Estate of Sustache, our analysis in Doyle should have focused on whether the specific factual allegations against WVCY constituted the injury-causing event. In other words, a plaintiff cannot simply add the word "negligence" to a complaint and expect that a supervision claim against an employer will create an accident

17

out of the employee's intentional assault and battery. A court must look to see whether the plaintiff alleges specific facts that show the bodily injury was caused by an occurrence——an accident. We did not do that in Doyle. We said that because the plaintiff alleged negligent supervision against the employer and negligence means accident, an "event" occurred for purposes of coverage. Doyle, 219 Wis. 2d at 289-90.

¶21 Doyle also contains two legally incorrect statements. Paragraph 37 says "insurance coverage is based solely on the policy as applied to the allegations within the plaintiff's complaint" and footnote 3 says coverage determinations must be confined "to the four corners of the complaint." Id. at 294, 284 n.3. Although Doyle speaks in terms of coverage, the "four corners" rule applies solely to analyzing an insurer's duty to defend. See Olson, 338 Wis. 2d 215, ¶¶33-39 (four corners rule applies in duty to defend cases). When an insurer follows one of the judicially-preferred approaches and moves to bifurcate the coverage determination from a trial on the merits, courts may look beyond the four corners of the complaint to determine whether the claims alleged are covered by the insurance policy. Id.

¶22 The incorrect statements this court made in Doyle, which have already been impliedly overruled by this court's multiple insurance cases[11] decided since Doyle, are now

---

[11] See, e.g., Estate of Sustache, 311 Wis. 2d 548, ¶¶27-29.

18

explicitly overruled. Further, we clarify that our analysis on the negligent supervision coverage claim fell short in <u>Doyle</u>. In analyzing whether a claim of negligent supervision is covered under an insurance policy, courts must compare the specific facts alleged against the employer with the language of the insurance policy to ascertain whether the incident or injury that gave rise to the claim satisfies the definition of occurrence.

¶23 Having set forth the existing law, we now apply it to the particular facts and insurance policy in the matter before us.

B. Whether the Auto-Owners Insurance Policy Provides Coverage

¶24 The issue presented here is limited to whether the Auto-Owners insurance policy provides coverage for the negligent supervision claim Talley asserts against Mustafa. Our focus is on coverage, not on the duty to defend, because Auto-Owners followed a judicially-preferred approach when it received Talley's complaint: it provided an initial defense to its insured and filed a motion to bifurcate the coverage issue from the liability trial. <u>See</u> <u>Water Well Sols. Serv. Grp., Inc.</u>, 369 Wis. 2d 607, ¶27.

¶25 To determine if coverage exists, we first compare the allegations in the plaintiff's complaint, as supplemented by the extrinsic evidence submitted, with the language of the policy to decide whether the facts allege an occurrence. <u>See</u> <u>Estate of Sustache</u>, 311 Wis. 2d 548, ¶¶30-31. If there is no occurrence, our analysis ends because no coverage exists; the claims do not

19

fall within the initial grant of coverage. Id., ¶¶57-58. If we conclude the facts allege an occurrence, we next examine the exclusions in the policy to determine whether any exclusion precludes coverage. Id., ¶57. Finally, if an exclusion applies, we examine the policy to see if any exceptions to the applicable exclusion restore coverage. See Wis. Pharmacal Co., LLC v. Neb. Cultures of Cal., Inc., 2016 WI 14, ¶22, 367 Wis. 2d 221, 876 N.W.2d 72. "[W]e must not rewrite the insurance policy to bind an insurer to a risk [] the insurer did not contemplate and for which it has not been paid." Everson v. Lorenz, 2005 WI 51, ¶14, 280 Wis. 2d 1, 695 N.W.2d 298.

¶26 The Auto-Owners insurance policy applies only to bodily injury "caused by an 'occurrence'" and "'[o]ccurrence' means an accident." Accident is not defined in the policy, but no one in this matter contends that Scott's act of intentionally punching Talley in the face was an accident. One cannot "accidentally" intentionally punch someone in the face. Talley does not argue otherwise. Rather, he insists that Mustafa negligently trained and supervised Scott by failing to tell him not to hit people. Talley asserts that Mustafa's conduct is an occurrence separate and distinct from Scott's intentional act. We disagree.

¶27 Our focus is "'on the incident or injury that gives rise to the claim, not the plaintiff's theory of liability.'" Stuart, 311 Wis. 2d 492, ¶36 (quoted source omitted). Our analysis focuses on the "injury-causing event." Schinner, 349 Wis. 2d 529, ¶66. In other words, we consider whether Talley

20

alleged facts against Mustafa that show Talley's bodily injury was caused by an accident, which would be an "occurrence" triggering insurance coverage. Simply inserting the word "negligence" into a complaint does not create coverage if the complaint fails to allege specific facts to establish an occurrence.

¶28 Talley's complaint alleges only that the "defendants" were negligent in failing to "train and supervise their employees" and "failed to provide adequate or proper security" because the "employees" "were the parties who attacked the plaintiff." Talley's extrinsic evidence adds only that Mustafa's act of "not telling Mr. Scott to not hit anyone" should trigger coverage.[12] In other words, the occurrence, in Talley's view, is Mustafa's failure to tell Scott not to punch customers in the face. Typically, an employee's training and subsequent supervision does not include a segment on how to refrain from punching others because the assault and battery criminal statutes already prohibit such conduct. See Wis. Stat. §§ 940.19-.208.

¶29 Talley's allegations asserting negligent supervision are entirely dependent upon the intentional act giving rise to the injury——the punching. The factual allegations say the punching caused Talley's injury. It is the only injury-causing

---

[12] Talley also rephrases the language from the complaint, arguing that Mustafa failed "to properly train, manage and/or supervise his employee."

21

event.   There are no factual allegations that Mustafa knew or should have known that Scott was likely to punch customers in the face.   There are no facts alleging that Mustafa himself acted in a specific way that led Scott to commit the act causing the injury.   Because Talley does not present any separate basis for Mustafa's negligence——any independent act by Mustafa that accidentally caused Talley's injury——no coverage exists.

¶30  This is not to say that a negligent supervision claim will never trigger insurance coverage.   When a plaintiff alleges facts independent from the intentional act giving rise to the injury, coverage may exist.   For example, in QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222 (Pa. Super. 2007), a court held the insurer had the duty to defend (and indemnify if the jury found in plaintiff's favor) its insured——Fat Daddy's Night Club——on the plaintiff's claim that the employer was negligent in failing to properly train its bouncer employees on how to safely evict unruly patrons from the club and how to render first aid.   Id., ¶¶11-15.   After removing a patron from the nightclub, the bouncers threw the man on the ground, forced him to lay face down and laid on top of him for so long that the man suffocated.   Id., ¶11.   The QBE court identified specific factual allegations in the complaint of negligence against the nightclub, separate from the bouncers' intentional acts, sufficient to conclude that the negligence claims "can be considered an 'accident' triggering an occurrence under [the] policy."   Id., ¶12.   The specific factual allegations separate from the bouncers' intentional acts included the failure of the

22

nightclub to properly teach the bouncers how to eject patrons, use the correct amount of restraint, and render first aid. Id., ¶¶11-12. That is, had the employer in QBE taught its bouncers how to safely restrain and remove a patron and how to render first aid, the man in QBE may not have been injured. See also Vandenberg v. Cont'l Ins. Co., 2001 WI 85, 244 Wis. 2d 802, 628 N.W.2d 876 (holding coverage existed for daycare provider's negligent supervision of her child, who placed pillows on top of a sleeping infant that caused infant to suffocate).

C. Courts Reject Plaintiffs' Attempts at Creative Pleading

¶31 In contrast, when the injury giving rise to the suit is caused by an employee intentionally choosing to commit a criminal act, courts reject a plaintiff's attempt to secure coverage by alleging negligence against an employer. For example, in Smith v. Animal Urgent Care, 542 S.E.2d at 828, the plaintiff filed suit against Animal Urgent Care and one of its veterinarians, Dr. Karl E. Yurko. The plaintiff alleged that Yurko sexually harassed her, causing her injury. Id. The West Virginia Supreme Court of Appeals held that including a negligence claim against Animal Urgent Care in the complaint "does not alter the essence of the claim for purposes of determining the availability of insurance coverage. Sexual harassment, and its inherently non-accidental nature, remain the crux of the case regardless of whether negligence is alleged against [the employer]." Id. at 832. See also United Nat'l Ins. Co. v. Entm't Grp., Inc., 945 F.2d 210, 211, 214 (7th Cir. 1991) (holding no coverage for plaintiff's claim alleging

negligence against theatre owner for injuries caused by sexual assault in theatre washroom) (applying the policy's assault and battery exclusion); U.S. Underwriters Ins. Co. v. Val-Blue Corp., 647 N.E.2d at 1344 (holding no coverage for plaintiff's claim alleging negligent supervision against nightclub for injuries caused when nightclub's security guard shot plaintiff) (applying the policy's assault and battery exclusion); Terra Nova Ins. Co. v. Thee Kandy Store, Inc., 679 F. Supp. 476, 478 (E.D. Pa. 1988) (holding no coverage for plaintiff's claim that employer failed to prevent assault and battery committed by employee) (applying the policy's assault and battery exclusion); Terra Nova Ins. Co. v. N.C. Ted, Inc., 715 F. Supp. 688, 691-92 (E.D. Pa. 1989) (holding no coverage for negligence where cause of injury was assault and battery, which is not an accident and therefore not an occurrence).

¶32 Merely inserting negligence into a complaint that alleges only injuries caused by an intentional assault and battery will not create an occurrence (defined as an accident) under an insurance policy. See Mt. Vernon Fire Ins. Co. v. Dobbs, 873 F. Supp. 2d at 765-66 (explaining that "[a]lthough the word 'negligently' is present, the complaint describes an intentional assault"; thus, no coverage exists on plaintiff's complaint alleging negligence against business whose agents caused injuries when they "hit, kicked, and punched" plaintiff).

¶33 A plaintiff's attempt to reconfigure a claim of assault and battery as a claim of negligence will not transform an intentional act into an accidental one. See United Nat'l

24

<u>Ins. Co. v. Tunnel, Inc.</u>, 988 F.2d 351, 352-55 (2d Cir. 1993) (holding no coverage where plaintiff alleged a nightclub's negligent hiring of a bouncer caused injuries when the bouncer's intentional assault on the plaintiff fractured his skull and put him in a coma for two weeks; plaintiff's amending of complaint pretending an assault and battery never occurred will not change the substance of the claim).  Talley's complaint asserts an intentional assault and battery.  He fails to provide any specific facts separate from the assault and battery to show any accidental actions by Mustafa that caused Talley's broken jaw.  Accordingly, there is no coverage for the negligent supervision claim under Auto-Owners policy.

D.  Whether Mustafa's Belief Regarding Coverage Controls

¶34 From the beginning, Mustafa has taken the position that there is no insurance coverage for the negligent supervision claim against him.  Auto-Owners asserts that when the insured and insurer agree that an insurance policy does not provide coverage, their agreement controls the coverage determination.  In other words, the injured party, who is not a party to the insurance contract, should not be able to fight for coverage when the insured concedes none exists.

¶35 The scenario Auto-Owners posits is not common.  An insured is often the party fighting for insurance coverage.  And, as Auto-Owners points out, insurance policies are contracts to which courts apply the same rules of law applicable to other contracts.  See <u>Garriguenc v. Love</u>, 67 Wis. 2d 130, 134-35, 226

N.W.2d 414 (1975). We interpret the language of an insurance contract from the position of a reasonable person in the position of the insured. Id. Auto-Owners asks us to hold that if the parties to the contract agree as to its interpretation, neither the injured party nor the court should be able to disregard that agreement.

¶36 We reject the bright-line rule Auto-Owners requests. While an insured's belief that no coverage exists may be considered, courts follow established principles of law applicable to insurance coverage determinations. These settled rules are objective, based on the insurance policy's language compared to the specific factual allegations, and applied on a case-by-case basis. See K.A.G. by Carson v. Stanford, 148 Wis. 2d 158, 165, 434 N.W.2d 790 (Ct. App. 1988). Unlike coverage determinations based on an insured's subjective understanding of an insurance contract, the rules courts apply in interpreting a policy's provisions are not subject to unknown pressures, lack of knowledge, or manipulation. A neutral and detached court of law, tasked with determining whether an insurance policy provides coverage, engages in an objective application of the policy terms and conditions to the facts of the case, ensuring consistent coverage determinations grounded in the text of the insurance contract. Leaving the coverage determination to an insured—who may be unfamiliar with the law or have personal reasons for taking the position that the insurance policy does not provide coverage—would replace the rule of law with subjective and therefore unpredictable

26

outcomes.   Accordingly, we decline to adopt a rule that would allow the insured's assessment of coverage to supplant the actual words of the insurance policy.

## IV.   CONCLUSION

¶37 The court of appeals erred in reversing the circuit court's grant of summary and declaratory judgment.   The circuit court correctly concluded that the Auto-Owners insurance policy does not provide coverage to Mustafa for Talley's claim of negligent supervision.   In comparing Talley's complaint, along with the extrinsic evidence obtained through discovery, to the language of the policy, we conclude that this policy does not provide coverage under these circumstances.   The policy covers bodily injury caused by an occurrence, which is defined as an accident.   There is no dispute that Scott acted intentionally when he punched Talley in the face.[13]   The punching was not an accident and it is the punching that caused Talley's injuries. Talley failed to allege specific acts by Mustafa that caused Talley's injuries.   When a negligent supervision claim rests solely on an employee's intentional act of assault and battery without any separate basis for a negligence claim against the employer, no coverage exists.

¶38 In addition, we reject Auto-Owners' request that we allow an insured's agreement with its insurer to control the

---

[13] Scott's position that the incident never occurred at all has no impact on our analysis because Scott is not a party to this appeal.

coverage determination. Instead, we continue to base coverage determinations on the language of insurance contracts, applying established principles of law to the facts presented in each case.

*By the Court.*—The decision of the court of appeals is reversed.

¶39 ANN WALSH BRADLEY, J. *(dissenting).* The issue presented is whether Mustafa Mustafa's business liability insurance policy covers Talley's claim that Mustafa negligently supervised his security guard. That is, assuming Talley proved his negligent supervision claim against Mustafa, would the insurance policy require Auto-Owners to indemnify Mustafa for the damages caused by Mustafa's negligence? See Estate of Sustache v. Am. Family Ins. Co., 2008 WI 87, ¶29, 311 Wis. 2d 548, 751 N.W.2d 845 (court is to assume plaintiff will prove his case in determining whether the insured has coverage).

¶40 Under the guise of answering the coverage question, the majority instead scrutinizes the merits and perceived weaknesses of Talley's negligent supervision claim. It concludes that the insurance policy does not provide coverage for Talley's negligent supervision claim against Mustafa because the claim cannot succeed.

¶41 In reaching its conclusion, the majority errs in two distinct ways. First, the majority fails to analyze the accident from the standpoint of the insured, thereby misconstruing the injury-causing events alleged in Talley's complaint. Second, it misunderstands the court's task at a coverage trial.

¶42 I determine that when correctly viewed from the standpoint of the insured and when the court properly adheres to its task at a coverage trial, the insurance policy provides coverage for Talley's negligent supervision claim against Mustafa. Accordingly, I respectfully dissent.

1

I

¶43 Archie Talley alleges that he suffered damages as a result of Mustafa's negligent failure to properly supervise a security guard employed at Mustafa's liquor store and food market. The complaint alleges that after initiating a verbal altercation with Talley as Talley entered Mustafa's store, the security guard punched Talley twice in the face. At the time of the assault, Mustafa carried a business liability insurance policy with Auto-Owners Insurance Company that covered bodily injuries caused by accidents (e.g. negligent acts). See Doyle v. Engelke, 219 Wis. 2d 277, ¶¶23-24, 580 N.W.2d 245 (1998) (explaining that negligent acts constitute "accidents").

¶44 Specifically, the policy covers bodily injury or property damage caused by an "occurrence." See majority op., ¶3. The policy defines an "occurrence" as "an accident[.]" An exclusion to the liability coverage provides that: "This insurance does not apply to: a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Id. (emphasis added).

¶45 The majority rests its determination of no coverage on the conclusion that there is no "occurrence" covered by the policy. It arrives at this conclusion because, in its view, Mustafa cannot be liable for negligent supervision given that "[i]ntentionally punching someone in the face two times is not an accident under any definition." Majority op., ¶16. Further, it reasons that the law does not require Mustafa "to tell [the security guard] not to punch customers in the face." Id., ¶28.

2

¶46 Of course, intentionally punching someone in the face is not an accident from the standpoint of the assailant. And, of course the law does not require Mustafa to say to the security guard, "do not punch customers in the face." Such conclusions are obvious and do not require legal analysis. It is in its faulty legal analysis where the majority stumbles.

II

¶47 The majority's legal analysis suffers from tunnel vision. It focuses on the assault by the security guard, thereby misconstruing the injury-causing event alleged in the negligent supervision claim.

¶48 Talley certainly alleges that the actual physical assault caused him injury, but that is not the only injury-causing event he alleges. Additionally, he alleges as an injury-causing event that Mustafa failed to properly supervise his store's security guard.

¶49 Assuming Talley is successful in proving his negligent supervision claim against Mustafa, he will have proven that Mustafa was negligent by breaching a duty of care owed to Talley; the security guard's assault was a cause-in-fact of Talley's injury; and Mustafa's failure to properly train or supervise his security guard was the cause-in-fact of the assault. That is, Talley will have proven that Mustafa's negligent failure to properly supervise his security guard was a cause-in-fact of the assault.

¶50 "[T]he determination of whether an injury is accidental under a liability insurance policy should be viewed

3

from the standpoint of the insured." Schinner v. Gundrum, 2013 WI 71, ¶52, 349 Wis. 2d 529, 833 N.W.2d 685. Whether the assailant acted intentionally has no bearing on this question. Indeed, Talley concedes that the assault itself was an intentional act, which is not covered by the Auto-Owners policy.[1] Thus, our focus should be on the negligent supervision claim against Mustafa only.

¶51 Insurance contracts are interpreted as they would be understood by a reasonable person in the position of the insured. Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. Mustafa's insurance policy covers bodily injuries caused by his negligent acts. A reasonable insured would understand this to cover damages caused by the insured's negligent failure to properly supervise and train his security guard.

¶52 Further, a reasonable insured would not understand that the policy's intentional-act exclusion precluded coverage for a negligent supervision claim. See id., ¶24 (if the claim triggers an initial grant of coverage, the court then determines whether any exclusions preclude coverage of the claim). There is nothing in the record to indicate that Mustafa intended the assault. Thus from the standpoint of the insured, the assault was unintended and therefore an accident, constituting an "occurrence" under the policy.

---

[1] See Resp. Br. at 22.

4

III

¶53 The majority additionally errs by impermissibly relying on the perceived weakness of Talley's negligent supervision claim to determine that the insurance policy does not provide coverage for that claim. In the majority's view, there can be no coverage for Talley's negligent supervision claim because the claim cannot succeed. See majority op., ¶¶28-29.

¶54 This line of reasoning reflects a misunderstanding of the court's task at a coverage trial. At a coverage trial, the court's task is to determine if the language of the policy requires the insurance company to indemnify its insured if the plaintiff's claims against the insured are successful. See Estate of Sustache, 311 Wis. 2d 548, ¶29 (court is to assume plaintiff will prove his case in determining whether the insured has coverage); see also Olson v. Farrar, 2012 WI 3, ¶38, 338 Wis. 2d 215, 809 N.W.2d 1 (quoting Estate of Sustache, 311 Wis. 2d 548, ¶29). In completing this task, the court should not focus on the plaintiff's likelihood of success on the merits. Instead, the court should concern itself only with whether coverage is required by the language of the policy, assuming the plaintiff's claims are successful.

¶55 There are good reasons why the court should not entertain merit-based arguments made during the course of a coverage trial. Such a practice places the insured in a very awkward position. When the insurance company argues that coverage does not exist because the plaintiff's claims are too

5

weak to succeed, what is the insured to do? Should the insured argue that the claims against him lack merit? Or the insured could argue that the plaintiff's claims are capable of succeeding, and thus coverage would be afforded under the language of the policy assuming that the plaintiff would prove the case against the insured.

¶56 It appears that each possibility presents the insured with a catch-22. If the insured argues that the claims brought against the insured are strong enough to proceed to trial (thus strengthening the insured's argument that coverage should be afforded), he undermines his argument at the liability phase that the plaintiff's claim lacks merit. On the other hand, if the insured instead asserts that the claims against the insured are too weak to proceed to trial in order to avoid undermining the insured's merit-based arguments against the plaintiff's claims, he argues against his own interest in the coverage dispute and risks losing the benefit of insurance coverage.

¶57 This untenable choice can be avoided by courts simply adhering to the task at hand in a coverage dispute: determining whether the language of the policy would require the insurance company to indemnify the insured for damages arising out of a particular claim assuming that the plaintiff is successful in proving that claim at trial.

¶58 The majority's failure to understand the court's task at a coverage trial likewise portends to undercut the well established procedure that when coverage is disputed, coverage and liability issues are bifurcated at trial. See, e.g., Marks

6

v. Houston Cas. Co., 2016 WI 53, ¶63, 369 Wis. 2d 547, 881 N.W.2d 309 (quoting Prof'l Office Bldgs., Inc. v. Royal Indem. Co., 145 Wis. 2d 573, 585, 427 N.W.2d 427 ("Where coverage is an issue, bifurcated trials are the norm."); Elliott v. Donahue, 169 Wis. 2d 310, 318, 485 N.W.2d 403 (1992) (explaining that "the insurer should not only request a bifurcated trial on the issues of coverage and liability, but it should also move to stay any proceedings on liability until the issue of coverage is resolved").

¶59 A motion to bifurcate the coverage and liability trials was made and granted in this case. Yet, if coverage is denied on the basis that the claim at issue cannot succeed on the merits, why would the circuit court need to bifurcate the issues of liability and coverage in the first instance? If it is truly proper to raise merit-based arguments against a claim in the context of a coverage dispute, there seems to be little, if any, need to bifurcate the issues of coverage and liability because the argument against coverage is also an argument against liability.

IV

¶60 The majority opinion misunderstands both the allegations in the complaint and the applicable law regarding coverage trials. It ignores Talley's claim that Mustafa's negligent supervision of his security guard was a cause-in-fact of the assault, and mistakenly engages in an analysis of the merits of Talley's negligent supervision claim. It instead should cabin its analysis to whether coverage would be afforded

7

under the language of the policy assuming Talley succeeds in proving his negligent supervision claim.

¶61 I conclude that the policy provides coverage for Talley's claim of negligent supervision against Mustafa. Properly viewed from Mustafa's standpoint, the security guard's punch of Talley was an accident and therefore a covered "occurrence."

¶62 For the reasons set forth above, I respectfully dissent.

¶63 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and DANIEL KELLY join this dissent.

¶64 DANIEL KELLY, J. *(dissenting)*. In the broadest sense, there are three relevant analytical phases in this case. The first inquires into whether the plaintiff's complaint states a cause of action upon which relief can be granted (the pleadings phase). The second addresses whether the defendant's commercial general liability insurance policy provides coverage for the claimed damages (the coverage phase). And the third is the trial on the merits of the plaintiff's cause (the merits phase). This case required us to focus on the coverage phase. That is, we were supposed to be reviewing whether Mr. Mustafa's insurance policy provided coverage for Mr. Talley's damages. However, we allowed a mélange of insurance provisions, pleading disputes, and policy questions to divert us into the first and third phases. And there we foundered.

¶65 The circuit court wisely bifurcated the trial proceedings in this case so that the parties could determine whether the policy provides coverage for the alleged tort (the coverage phase) prior to litigating the merits of the plaintiff's complaint (the merits phase). The coverage phase calls upon the court to answer one——and only one——question: If the plaintiff should prevail in the merits phase, would the insurance policy cover the damages? If not, the court dismisses the insurer; otherwise, the insurer remains for the duration.

¶66 The purpose of the coverage phase is not to decide whether the plaintiff has stated a good cause of action (the pleading phase), nor is it to try the merits of the plaintiff's claim (the merits phase). The purpose of the coverage phase is

to do nothing but authoritatively construe the insurance contract. That is to say, the court takes as its starting point that the plaintiff will win his case, and based on that assumption, it determines whether the policy provides coverage. Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶29, 311 Wis. 2d 548, 751 N.W.2d 845 ("The insurer's duty to continue to defend is contingent upon the court's determination that the insured has coverage if the plaintiff proves his case."). Instead of focusing on the coverage-phase question, the court's opinion dwelled sometimes on the pleading phase, sometimes on the merits phase. But it gave little attention to the actual coverage question before us.

## I. THE PLEADINGS PHASE

¶67 The portion of the court's opinion spent on the pleadings phase improperly required Mr. Talley's negligent supervision claim to satisfy a standard of pleading we traditionally require only of matters sounding in fraud.[1] A plaintiff may succeed with such a claim if, as a factual matter,

---

[1] Compare Wis. Stat. § 802.03(2) (2015-16) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."), and John Doe 1 v. Archdiocese of Milwaukee, 2007 WI 95, ¶39, 303 Wis. 2d 34, 734 N.W.2d 827 ("We have interpreted this statute to require that 'allegations of fraud must specify the particular individuals involved, where and when misrepresentations occurred, and to whom misrepresentations were made.'" (quoting Kaloti Enters., Inc. v. Kellogg Sales Co., 2005 WI 111, ¶21, 283 Wis. 2d 555, 699 N.W.2d 205)), with majority op., ¶16 ("Because there are no facts in Talley's complaint (or in any extrinsic evidence) alleging any specific separate acts by Mustafa that caused Talley's injuries, there is no occurrence triggering coverage for the negligent supervision claim.").

2

the defendant's breach of its duty to train and supervise its employee was a cause-in-fact of the plaintiff's actual damages.[2] We have never required a heightened pleading standard for this cause of action, and the court identifies nothing to suggest otherwise.

¶68 And yet the court's analysis unmistakably demanded of Mr. Talley something more than notice-pleading.[3] The court observed that "Talley's complaint alleges only that the 'defendants' were negligent in failing to 'train and supervise their employees' and 'failed to provide adequate or proper security' because the 'employees' 'were the parties who attacked the plaintiff.'" Majority op., ¶28. This, the court concluded, was insufficient. "[T]he negligent supervision claim against Mustafa can qualify as an occurrence only if facts exist showing that Mustafa's own conduct accidentally caused Talley's injuries." Id., ¶16.

---

[2] John Doe 1, 303 Wis. 2d 34, ¶16 ("A claim for negligent supervision of an employee requires a plaintiff to plead and prove all of the following: (1) the employer had a duty of care owed to the plaintiff; (2) the employer breached its duty; (3) a wrongful act or omission of an employee was a cause-in-fact of the plaintiff's injury; and (4) an act or omission of the employer was a cause-in-fact of the wrongful act of the employee.").

[3] "As a notice pleading state, Wisconsin law requires only that a complaint 'set forth the basic facts giving rise to the claims.'" United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc., 2013 WI 72, ¶21, 349 Wis. 2d 587, 836 N.W.2d 807 (quoted source omitted). "The purpose of a complaint in a notice pleading jurisdiction is to provide 'sufficient detail' such 'that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery.'" Id. (quoted source omitted).

3

¶69 Why wouldn't Mr. Talley's allegations be enough? We are still a notice-pleading state, so to the extent the court was considering whether the complaint was sufficient, Mr. Talley didn't have to do very much at all. He needed to allege that Mr. Mustafa had a duty, he breached it, and his breach caused actual damages. That's all. He didn't need to identify the nature of training Mr. Mustafa should have provided to his employee, or how it was deficient, or when the training should have been done, or how frequently.[4] That is to say, he had absolutely no obligation to fill his complaint with discrete facts capable of proving Mr. Mustafa's negligence and the causal connection to his damages.

¶70 So the nature of the court's analysis is odd because there is no precedent for a heightened standard of pleading for negligent supervision claims. But it is also odd because the court should not have been conducting this analysis at all. We were not asked to review whether the circuit court should have dismissed this case for failing to state a claim upon which relief can be granted. We were asked to determine whether the insurance policy provides coverage, which assumes an adequately pled cause of action.

---

[4] The court says "the occurrence, in Talley's view, is Mustafa's failure to tell Scott not to punch customers in the face." Majority op., ¶28. That's one way of putting it, I suppose. A less patronizing way would be to say Mr. Talley's view is that Mr. Mustafa failed to teach Mr. Scott how to de-escalate tense situations so that verbal confrontations would not turn physical. That seems like a worthy subject of training, yes? Especially for an employee (if employee he was) with customer-facing responsibilities?

4

## II. THE MERITS PHASE

¶71 The court then leapfrogged from the pleading phase all the way to the merits phase to opine on whether Mr. Talley would prevail on his claim. But our opinion on that question is pretty much the definition of irrelevant. Maybe Mr. Talley won't prevail. If he doesn't, that won't say a thing about whether the insurance policy covered the claim. And that is because the coverage phase assumes not just an adequately-pled cause of action, but a successful one. Estate of Sustache, 311 Wis. 2d 548, ¶22 ("[T]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." (quoting Grieb v. Citizens Cas. Co. of New York, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967)).

¶72 The court erred not just because it had no business addressing the merits of Mr. Talley's case, but also in the substance of its analysis. Specifically, the court made no allowance for the nature of a negligent supervision claim, which always involves concurrent causation. Instead, it required a separate and distinct line of causation between Mr. Mustafa and Mr. Talley. The court said coverage will only exist "[w]hen a plaintiff alleges [actionable] facts independent from the intentional act giving rise to the injury." Majority op., ¶30. That is to say, "the negligent supervision claim against Mustafa can qualify as an occurrence only if facts exist showing that Mustafa's own conduct accidentally caused Talley's injuries."

5

Id., ¶16. It then concluded that "when a negligent supervision claim is based entirely on an allegation that an employer should have trained an employee not to intentionally punch a customer in the face, no coverage exists." Id.; see also id., ¶29 ("Because Talley does not present any separate basis for Mustafa's negligence——any independent act by Mustafa that accidentally caused Talley's injury——no coverage exists.").

¶73 This entirely misses the fact that negligent supervision claims never involve a separate line of causation between the employer and the victim. To the contrary, the causal line always, every single time, goes from the employer, through the employee, to (in this case) Mr. Talley's face. We succinctly described the proper analysis in Miller: "With respect to a cause of action for negligent hiring, training or supervision, we determine that the causal question is whether the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury." Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 262, 580 N.W.2d 233 (1998). This, we said, "requires two questions with respect to causation. The first is whether the wrongful act of the employee was a cause-in-fact of the plaintiff's injury. The second question is whether the negligence of the employer was a cause-in-fact of the wrongful act of the employee." Id. There is no separate causal pathway from Mr. Mustafa to Mr. Talley. It must go through Mr. Scott, or there is no causality at all.

¶74 The facts the court faults Mr. Talley for not presenting are, to the extent he has them, those that will support the two jury questions described in Miller. The court hasn't seen them, naturally, because we haven't yet arrived at the merits phase. Mr. Talley will need to be concerned if he can't marshal them once the trial commences. But not now. So, in concluding there is no coverage because Mr. Talley hasn't sufficiently supported his claim, the court jumped the gun. And if incorporating the merits inquiry into the coverage analysis is not jumping the gun, there was hardly any reason to bifurcate the proceedings in the first place, was there?

### III. THE COVERAGE PHASE

¶75 If we had narrowed our attention to the proper phase under consideration, the question we are resolving would be of little moment. We have previously held that a commercial general liability insurance policy with terms functionally identical to the ones we review today provides coverage for an employer's negligent training or supervision. See Doyle v. Engelke, 219 Wis. 2d 277, ¶¶16-17, 19, 580 N.W.2d 245 (1998). And the court agrees, at least in theory, that this is so. Majority op., ¶30 ("This is not to say that a negligent supervision claim will never trigger insurance coverage."). So maybe the point of this case is to overrule Doyle's holding that negligent supervision of an employee qualifies as an occurrence within the meaning of CGL policies like the one at issue here. If that is what we are doing, we should just say so. Otherwise, this case presents nothing conceptually distinct from Doyle, a

7

case we decided twenty years ago. Perhaps insurers should be protected from claims of this nature. The answer to that question, however, is beyond both my ken and our authority. But I do know there has been nothing in the last two decades that has prevented insurers from protecting themselves through an appropriately-drafted exclusion from coverage.

*

¶76 But perhaps this was not really about insurance coverage at all, and we were looking for an opportunity to declare that negligent supervision claims do not lie when the employee's conduct is covered by criminal statutes. See majority op., ¶28 ("Typically, an employee's training and subsequent supervision does not include a segment on how to refrain from punching others because the assault and battery statutes already prohibit such conduct."). If this is what we were about, we should have said so and given our reasons for restricting the scope of this tort. Maybe that would even be a good policy choice. But I would prefer to leave that question to the legislature.

¶77 Additionally, if we have restricted the scope of this tort, we should recognize the effect of that ruling. If we really meant what we said in paragraph 28, then Mr. Talley has no meritorious claim against Mr. Mustafa. And if that is so, our mandate should include dismissal of the case. That would be quite a curiosity——Mr. Talley lost on the merits of his cause while the merits phase of his case was still stayed. On the

other hand, perhaps that odd result is a hint that we have gotten ahead of ourselves.

¶78 I believe the court of appeals got this case exactly right. For the reasons expressed in that opinion, and the reasons I have given above, I respectfully dissent.

¶79 I am authorized to state that Justices SHIRLEY S. AMBRAHAMSON and ANN WALSH BRADLEY join this dissent.