COURT OF APPEALS
DECISION
DATED AND FILED

May 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1861**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV45

IN COURT OF APPEALS
DISTRICT III

---

KEVIN JOHN KOBYLARCZYK AND MELINDA KOBYLARCZYK,

    PLAINTIFFS-APPELLANTS,

  V.

TYLER J. HUCKSTORF AND JEFFREY M. HUCKSTORF,

    DEFENDANTS,

COUNTRY MUTUAL INSURANCE COMPANY,

    DEFENDANT-RESPONDENT.

---

      APPEAL from an order of the circuit court for Florence County: LEON D. STENZ, Judge. *Affirmed*.

      Before Stark, P.J., Hruz, and Gill, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Kevin and Melinda Kobylarczyk appeal from the circuit court's order granting Country Mutual Insurance Company's motion for summary judgment and dismissing Country Mutual from the instant case.  The court concluded that the Kobylarczyks' allegations in the lawsuit were insufficient to show that Kevin's injuries were caused by an "occurrence" to which coverage applies.  As a result, there was no initial grant of coverage for any of the Kobylarczyks' claims against the Huckstorfs, and Country Mutual had no duty to defend or indemnify its insureds, Jeffrey and Tyler Huckstorf.  We affirm.[1]

## BACKGROUND

¶2    The Kobylarczyks sued Jeffrey and Tyler Huckstorf, father and son respectively, following an altercation at a bar.  Specifically, the Kobylarczyks alleged claims for battery against Jeffrey and Tyler, negligent entrustment/supervision against Jeffrey, and Melinda alleged a claim for loss of consortium against both Jeffrey and Tyler.  According to the Kobylarczyks' complaint, while Kevin and the Huckstorfs were at the bar, "a discussion arose between" Jeffrey and Kevin "in the vicinity of the bar's pool table."  Jeffrey then "shoved and punched" Kevin "in the face."  The Kobylarczyks further alleged that, during the altercation, Tyler "made efforts to prevent others from coming to"

---

[1] Both parties' briefings on appeal violate the Rules of Appellate Procedure.  At times, the Kobylarczyks improperly cite only to their appendix in support of factual assertions in their briefs.  *See* WIS. STAT. RULE 809.19(1)(d)-(e) (2023-24); *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322 (stating that the appendix is not the record).  Country Mutual cites an unpublished opinion issued by this court before July 2009, in violation of WIS. STAT. RULE 809.23(3)(b) (2023-24).  As a high-volume, appellate court, we are entitled to expect briefing to follow the basic Rules of Appellate Procedure.  We caution both the Kobylarczyks' and Country Mutual's counsel that future violations of the Rules of Appellate Procedure may result in sanctions.  *See* WIS. STAT. RULE 809.83(2) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

Kevin's aid, and Tyler "kicked" Kevin. After the altercation, Tyler "launched an unprovoked and unexpected strike, punching" Kevin "directly in the face, causing him to lose consciousness." The Kobylarczyks alleged that Tyler had not yet reached the legal drinking age at the time of the incident, yet he was "consuming intoxicating alcoholic beverages provided to him by and under the supervision of his father, Jeffrey."

¶3 At the time of the incident, the Huckstorfs were covered by a homeowners insurance policy issued by Country Mutual. The policy states that "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' … caused by an 'occurrence' to which this coverage applies," Country Mutual will provide a defense and "[p]ay up to 'our' limit of liability for damages for which an 'insured' is legally liable." The policy defines "occurrence" as "an accident … which results" in "[b]odily injury." The policy expressly excludes from coverage both bodily injury "that may reasonably be expected or intended to result from the intentional acts of an 'insured'" and bodily injury "arising from any criminal act."

¶4 The Huckstorfs notified Country Mutual that the Kobylarczyks had sued them. Upon investigation, Country Mutual notified the Huckstorfs that "the allegations contained in the Kobylarczyks' complaint [were] not covered by" the policy. Therefore, Country Mutual denied coverage, including providing a defense to the Huckstorfs, and did not intervene in the action.

¶5 Upon learning that Country Mutual was the Huckstorfs' insurer, the Kobylarczyks filed an amended complaint adding Country Mutual as a defendant and alleging that the policy between Country Mutual and the Huckstorfs "was in full force and effect at the time of, and provides coverage for, the facts and claims

asserted herein." The remaining factual allegations in the amended complaint mirrored those alleged in the original complaint.

¶6 Country Mutual moved for summary judgment, seeking dismissal from the lawsuit. Country Mutual argued that there was no coverage under the policy because: there was no "occurrence," as Jeffrey and Tyler's actions resulting in Kevin's bodily injuries were not "accidental" and as Jeffrey's act of providing Tyler with alcohol was intentional, not accidental. Country Mutual further asserted that even if there had been an "occurrence," the policy precluded coverage for Kevin's bodily injuries because Jeffrey and Tyler's actions were intentional and/or criminal acts. In addition, Country Mutual argued that any alleged negligent supervision by Jeffrey was not accidental because it "was merely a continuation of intentional acts" and that the Kobylarczyks had failed to allege that "Jeffrey committed any independent negligent act that accidentally caused" Kevin's bodily injuries. Finally, Country Mutual contended that the Kobylarczyks' loss of consortium claim was not covered under the policy because it was a claim for damages, not an independent claim for personal injury.

¶7 The Kobylarczyks opposed Country Mutual's motion for summary judgment, without submission of a supporting affidavit, arguing that "Country Mutual is responsible for providing liability coverage due to Jeffrey's negligence and is a proper party for this suit." According to the Kobylarczyks, "[f]rom the standpoint of … Jeffrey, Tyler's punch and the injuries to Kevin were accidental" because "Jeffrey did not expect or intend Tyler to … cause injury to Kevin" after Jeffrey provided alcohol to Tyler. The Kobylarczyks further argued that "Jeffrey's failure to maintain supervision and control" of Tyler was "not a continuation of later intentional acts." The Huckstorfs joined the Kobylarczyks' arguments "with respect to coverage."

4

¶8      The circuit court granted Country Mutual's motion for summary judgment after determining that the "allegations contained in … [the] amended complaint do not constitute an 'occurrence' pursuant to" the policy, and, therefore, there was no initial grant of coverage for any of the Kobylarczyks' claims against the Huckstorfs.  The court stated that there was no "accident" because Jeffrey intentionally provided alcohol to Tyler and that the altercations and Jeffrey's supervision were "one incident."  The court therefore dismissed the Kobylarczyks' claims against Country Mutual.

¶9      The Kobylarczyks now appeal.

## DISCUSSION

¶10      We review an order for summary judgment de novo, using the same methodology as the circuit court.  *Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102.  Summary judgment shall be awarded if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).

¶11      This case also requires us to interpret an insurance policy, which we review de novo.  *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶12, 369 Wis. 2d 607, 881 N.W.2d 285.  We interpret insurance policies to "give effect to the intent of the contracting parties."  *American Fam. Mut. Ins. Co. v. American Girl, Inc*., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65.  In doing so, "[w]e construe policy language as a reasonable person in the position of the insured would understand such language."  *Water Well Sols.*, 369 Wis. 2d 607, ¶14.  "However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium."  *American Girl*, 268 Wis. 2d 16, ¶23.

¶12    "Insurance policies are contracts that generally establish an insurer's 'duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages.'" *Water Well Sols.*, 369 Wis. 2d 607, ¶14 (citation omitted).  It is well established that an insurer's duty to defend its insured is broader than its duty to indemnify because an "insurer is under an obligation to defend only if it *could be* held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." *Id.*, ¶17 (citation omitted).

¶13    The parties disagree if we are reviewing whether Country Mutual has a duty to defend or a duty to indemnify.  The Kobylarczyks contend that the issue before this court is whether the amended complaint "stated a claim which triggered Country Mutual's duty to defend" the Huckstorfs.  Conversely, Country Mutual argues that its duty to defend was never litigated before the circuit court and that the issue addressed by the circuit court was whether there was an "occurrence" for purposes of coverage under the policy—i.e., "whether Country Mutual owe[s] a duty to indemnify" the Huckstorfs.  Further, Country Mutual asserts that the Kobylarczyks "abandoned" the indemnity issue by instead briefing on appeal only whether Country Mutual has a duty to defend.

¶14    The confusion stems largely from Country Mutual's decision in this case not to "follow one of" the "strongly encourage[d]" and "judicially-preferred approaches" to disputing coverage.  *See id.*, ¶27; *Talley v. Mustafa*, 2018 WI 47, ¶24, 381 Wis. 2d 393, 911 N.W.2d 55.  For example, Country Mutual did not "provide an initial defense" to the Huckstorfs "and seek a declaratory judgment on coverage." *See Water Well Sols.*, 369 Wis. 2d 607, ¶27.  Nor did Country Mutual "request a bifurcated trial on the issue of coverage and move to stay all proceedings on liability until a coverage determination [was] made." *See id.*

Rather, Country Mutual made "a unilateral determination to refuse to defend" the Huckstorfs. *See id.* An insurer who chooses this option "does so at its own peril." *Id.*, ¶28. However, if the insurer is ultimately correct—and no coverage exists under a policy—then the insurer faces no adverse consequences. *See Marks v. Houston Cas. Co.*, 2016 WI 53, ¶¶2, 38, 47, 369 Wis. 2d 547, 881 N.W.2d 309.

¶15 We conclude that the issue before this court is whether Country Mutual has a duty to indemnify the Huckstorfs given the terms of coverage in the policy. Although Country Mutual unilaterally refused to provide a defense to the Huckstorfs, and the Huckstorfs—Country Mutual's insured in this case—did not assert a claim for coverage, the Kobylarczyks ultimately added Country Mutual as a party to the lawsuit. Once Country Mutual filed its motion for summary judgment, the issue became one of whether liability coverage to the Huckstorfs existed for the Kobylarczyks' tort claims against them because Country Mutual had already refused to provide a defense to the Huckstorfs, which the Huckstorfs did not dispute. Accordingly, our review is not limited to the four-corners rule. *See Water Well Sols.*, 369 Wis. 2d 607, ¶15.

¶16 This context does not mean that the Kobylarczyks "abandoned" the issue for appeal. As the Kobylarczyks argue, the issue before the circuit court was whether the Huckstorfs' policy provided coverage for the Kobylarczyks' claims. Although the Kobylarczyks frame the issue as a duty to defend on appeal—i.e., they apply the four-corners rule—the question remains whether there was an "occurrence" for purposes of coverage.

¶17 We must also address which claims the Kobylarczyks argue that the policy covers. As they did in the circuit court, the Kobylarczyks on appeal do not

appear to argue that the policy independently provides coverage for their battery or loss of consortium claims. Thus, we will limit our review accordingly.

¶18 "There is an established framework for determining whether coverage is provided under the terms of an insurance policy." *Olson v. Farrar*, 2012 WI 3, ¶40, 338 Wis. 2d 215, 809 N.W.2d 1. Only the first step of the framework need be addressed here to determine whether Kevin's injuries were caused by an "occurrence." That is, we examine whether the policy makes an initial grant of coverage. *Id.*, ¶41; *Schinner v. Gundrum*, 2013 WI 71, ¶37, 349 Wis. 2d 529, 833 N.W.2d 685 ("[I]f the court determines that the policy was not intended to cover the asserted claims, it is not necessary to examine the policy's exclusions."). "To determine if coverage exists, we first compare the allegations in the plaintiff's complaint, as supplemented by the extrinsic evidence submitted, with the language of the policy to decide whether the facts allege an occurrence." *Talley*, 381 Wis. 2d 393, ¶25.

¶19 To reiterate, the policy defines "occurrence" as "an accident … which results" in "[b]odily injury." The policy excludes from coverage bodily injury "that may reasonably be expected or intended to result from the intentional acts of an 'insured.'" "The word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation." *American Girl*, 268 Wis. 2d 16, ¶37 (citation omitted). "A result, though unexpected, is not an accident; the means or cause must be accidental." *Id.* (formatting altered; citation omitted). Stated differently, an "accident" is "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." *Schinner*, 349 Wis. 2d 529, ¶60 (alteration in original; citation omitted).

¶20    On appeal, the Kobylarczyks appear to concede that Tyler intended to hit Kevin.  Still, they broadly argue that "just because some acts are intentional does not mean they cannot spawn negligent or accidental acts."  The Kobylarczyks support their position by citing the following allegation contained in the amended complaint: Jeffrey "did negligently provide [Tyler] with intoxicating alcoholic beverages while Tyler was under the legal drinking age, and thereafter [Jeffrey] did negligently supervise [Tyler] making it more likely that [Tyler] would conduct himself in a manner as to create an unreasonable risk of harm to others."  They further argue that "[t]here is nothing which suggests that Jeffrey had the foresight or expectation that his son would punch Kevin."

¶21    We agree with the Kobylarczyks' general assertion that a negligent supervision claim may precipitate insurance coverage under a policy similar to the one present here when a plaintiff alleges facts independent from an intentional act giving rise to an injury.  *See Talley*, 381 Wis. 2d 393, ¶30.  However, "[m]erely inserting negligence into a complaint that alleges only injuries caused by an intentional assault and battery will not create an occurrence (defined as an accident) under an insurance policy." *Id.*, ¶32.  "Our focus is 'on the incident or injury that gives rise to the claim, not the [Kobylarczyks'] theory of liability.'" *See id.*, ¶27 (citation omitted).  In other words, "we consider whether [the Kobylarczyks] alleged facts against [Jeffrey] that show [Kevin's] bodily injury was caused by an accident, which would be an 'occurrence.'" *See id.*

¶22    Here, the allegations pertinent to the negligent supervision claim pled with any specificity are entirely dependent upon the intentional acts giving rise to Kevin's injury—namely, Tyler intentionally punching Kevin. *See id.*, ¶29.  Essentially, the Kobylarczyks alleged in the amended complaint that Jeffrey and Tyler were at a bar, that Jeffrey negligently provided alcohol to Tyler, that Jeffrey

somehow negligently supervised Tyler, and that Tyler eventually punched Kevin after Jeffrey had punched Kevin.

¶23 These allegations, even if proven to be true, are insufficient to establish an "occurrence" because Tyler punching Kevin does not amount to accidental conduct, and the Kobylarczyks failed to allege how Jeffrey negligently provided alcohol to or supervised Tyler. Aside from their amended complaint, the Kobylarczyks failed to add any other significant facts in response to Country Mutual's motion for summary judgment.[2] Put differently, the Kobylarczyks did not allege how Jeffrey's acts of providing alcohol to Tyler and, thereafter, somehow failing to supervise Tyler caused an "accident" that led to Kevin's injuries. *Cf. Talley*, 381 Wis. 2d 393, ¶30 (citing favorably a case in which an appellate court in another jurisdiction ruled that a plaintiff sufficiently provided facts showing an "occurrence" by alleging that an "employer was negligent in failing to properly train its bouncer employees on how to safely evict unruly patrons from the club and how to render first aid").

¶24 On appeal, the Kobylarczyks contend that there are genuine issues of material fact "surrounding the duty to supervise and control Tyler" that preclude summary judgment, including: whether Tyler was in fact supervised or if he was "out of control"; at what point Jeffrey's supervision and control began and when it ended; whether Jeffrey failed to properly supervise and maintain control of Tyler;

---

[2] Jeffrey testified in his deposition that he was in the "back corner of the bar" "looking for [his] phone" when Tyler hit Kevin. On appeal, the Kobylarczyks do not argue that this fact would create an "occurrence" under the policy, and we will not consider it further in our analysis. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating that we will not abandon our neutrality to develop arguments on behalf of a party).

and whether any failure to supervise and control Tyler was a substantial factor in bringing about Kevin's injuries. None of these questions, however, create an issue of *material* fact over liability coverage under the policy. Once Country Mutual demonstrated that the factual allegations in pleadings, even if true, made clear that the policy would not provide coverage, the Kobylarczyks bore the burden of putting forth sufficient facts showing that coverage may still exist. *See **Baumeister v. Automated Prods., Inc.***, 2004 WI 148, ¶12, 277 Wis. 2d 21, 690 N.W.2d 1 ("If a moving party has established a prima facie case, the opposing party must then establish that there are disputed material facts, or undisputed material facts from which reasonable alternative inferences could be drawn, that entitle such a party to a trial.").

¶25 The factual issues asserted by the Kobylarczyks above are precisely the type of information lacking in the record, and which the Kobylarczyks failed to provide in response to Country Mutual's motion for summary judgment. In fact, the Kobylarczyks failed to submit any affidavits or attached exhibits when opposing Country Mutual's motion. *See* WIS. STAT. § 802.08(3) ("When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial."). To the extent these questions remain and could have been material to a coverage determination, the Kobylarczyks' failure to make a record in that regard cannot inure to their benefit so as to defeat an otherwise proper summary judgment.

¶26 The Kobylarczyks further argue that we should consider in our coverage analysis the liability statutes surrounding underage drinking with a

11

parent, as well as the "substantial factor" and "proximate cause" analyses applicable to negligence claims. However, neither the liability statutes nor general negligence principles negate the requirement for the Kobylarczyks to provide facts showing an "occurrence" in order for there to be coverage under the policy. *See Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 333, 531 N.W.2d 376 (Ct. App. 1995) ("[T]he substantial factor test does not define the risks for which coverage is afforded."). Again, to sufficiently demonstrate that Country Mutual had a duty to provide liability coverage, the Kobylarczyks were required to allege sufficient facts showing "a separate basis for [Jeffrey's] negligence—any independent act by [Jeffrey] that accidentally caused [Kevin's] injur[ies]." *See Talley*, 381 Wis. 2d 393, ¶30. "Simply inserting the word 'negligence' into a complaint"—essentially what the Kobylarczyks did here—"does not create coverage if the complaint fails to allege specific facts to establish an occurrence." *See id.*, ¶27.

¶27 Moreover, the Kobylarczyks' failure to adequately allege facts sufficient to show that coverage would apply under the policy is not forgiven by their assertion that Jeffrey's and Tyler's deposition testimony shows that they each acted in self-defense, which the Kobylarczyks argue is an exception in the policy to the intentional acts exclusion. "If there is no occurrence, our analysis ends because no coverage exists; the claims do not fall within the initial grant of coverage." *Talley*, 381 Wis. 2d 393, ¶25. In other words, we cannot determine whether an exception applies to an exclusion because we have concluded that

there is no initial grant of coverage under the policy for the Kobylarczyks' claims against the Huckstorfs.[3]

¶28 Because the circuit court correctly determined that the Kobylarczyks failed to present facts that, if true, would constitute an occurrence under Country Mutual's policy, no initial grant of coverage has been established and, therefore, Country Mutual has no duty to indemnify the Huckstorfs for any liability they may have regarding the Kobylarczyks' claims against them. Accordingly, we affirm the circuit court's decision granting Country Mutual summary judgment and dismissing it from the lawsuit.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] The Kobylarczyks raise several other issues related to the self-defense exception, none of which we consider because the issues and arguments were raised for the first time on appeal in the Kobylarczyks' reply brief. *See* ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party.").